1
2
3
4
5
6
7
8                       **UNITED STATES DISTRICT COURT**
9                           **DISTRICT OF ARIZONA**
10

11  **Western Alliance Bank,**                    )
12                  **Plaintiff,**                 )        **2:14-cv-0761 JWS**
13          **vs.**                                )        **ORDER AND OPINION**
14  **Richard Jefferson,**                         )        **[Re: Motion at Docket 76]**
15                  **Defendant.**                  )
16  ─────────────────────────────                  )
    **Richard Jefferson,**                         )
17                                                 )
                    **Counter-claimant,**          )
18          **vs.**                                )
19  **Western Alliance Bank,**                     )
20                                                 )
                    **Counter-defendant.**         )
21  ─────────────────────────────                  )
22  **Richard Jefferson,**                         )
23                  **Third-party plaintiff,**     )
24          **vs.**                                )
25  **Theodore Kritza & Michelle Lee**             )
    **Kritza,**                                    )
26                                                 )
                    **Third-party defendants.**    )
27  ─────────────────────────────                  )
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  MOTION PRESENTED

At docket 76 defendant, counter-claimant, and third-party plaintiff Richard Jefferson ("Jefferson") moves for a stay of this action until the pending federal criminal investigation of third-party defendant Theodore Kritza ("Kritza") is resolved.  Plaintiff and counter-defendant Western Alliance Bank ("Alliance") opposes Jefferson's motion at docket 80, and Kritza opposes it at docket 83.  Jefferson's reply to Kritza's opposition is at docket 85, and his reply to Alliance's opposition is at docket 86.  Oral argument was requested but would not assist the court.

## II. BACKGROUND

This case began as a breach-of-contract action that Alliance brought against Jefferson in state court.  Alliance's complaint alleges that on October 5, 2004, Alliance issued Jefferson a revolving line of credit in an original principal amount not to exceed $500,000 ("LOC") that Jefferson failed to pay by its January 15, 2014 maturity date.[1] Jefferson admits that his name is on the LOC agreement, but claims that his signature was forged.[2]

After the case was removed to this court, Jefferson brought two negligence counterclaims against Alliance.  First, Jefferson alleges that Alliance was negligent in failing "to implement and/or follow appropriate procedures to verify the authenticity of the signatures on documents purporting to name Jefferson" as a borrower.[3]  Second, Jefferson alleges that Alliance was negligent in supervising and training its agents.[4]

At docket 16 Jefferson filed a ten-claim third-party complaint against Kritza alleging that Kritza forged his name on the LOC documents and used the LOC funds

---

[1]Doc. 1-3 at 3 ¶ 6; *id*. at 4 ¶ 12.

[2]Doc. 14 at 3 ¶ 6; *id*. at 12.

[3]*Id*. at 16-17 ¶ 13.

[4]*Id*. at 18 ¶ 20.

without his consent.[5]  Between 2001 and 2013, Kritza was employed as Jefferson's
personal business manager.[6]  Jefferson concedes that during that time he granted
Kritza authorization to access to his financial accounts, credit information, and related
financial information.[7]  Alliance has submitted a durable power of attorney from 2003
that granted Kritza the power to "do any act" that Jefferson could do "with a bank or
other financial institution," including the power to borrow money from any banking or
financial institution "if deemed necessary by" Kritza.[8]  Jefferson contends that his
signature on this document was also forged[9] and, alternatively, it is invalid under
Arizona law because it is not notarized.[10]  Jefferson and Kirtza also dispute whether the
powers that Jefferson granted Kritza extended to Kritza's actual use of the LOC
money.[11]

Jefferson states the Federal Bureau of Investigation ("FBI") began an
investigation into Kritza's alleged fraud in 2013.[12]  He asserts that he has been unable
to obtain the FBI's evidence relevant to his affirmative defenses and his ability to seek
restitution while this investigation is pending.[13]  The FBI has written Jefferson a letter
confirming that Jefferson "has been identified as a federal crime victim by the FBI

---

[5]Doc. 16 at 3 ¶¶ 8, 10.  Jefferson later amended his third-party complaint to name
Kritza's wife as a third-party defendant.  Doc. 33.

[6]Doc. 16 at 4 ¶ 12; Doc. 23 at 3-4 ¶ 12.

[7]Doc. 16 at 4 ¶ 12.

[8]Doc. 80-2 at 4 ¶ 9c.

[9]Doc. 85; Doc. 85-1 at 13.

[10]Doc. 85 at 3-4 (citing A.R.S. § 14-5501, *et seq.*).

[11]Doc. 16 at 4 ¶ 12; Doc. 23 at 3-4 ¶ 12.

[12]Doc. 76 at 6.

[13]*Id.*

1   Phoenix Field Office.  The investigation was initiated on December 10, 2013 and," as of
2   March 30, 2015, the investigation is "open and active."[14]

3        Jefferson's lawyer asserts that he made an "informational demand" on
4   February 5, 2015, pursuant to the United States Department of Justice's "administrative
5   procedure set forth in 28 C.F.R. Part 16,"[15] but his demand was denied by "the
6   government until the completion of the FBI's criminal investigation."[16]  Jefferson does
7   not provide the court with a copy of the demand, but the demand apparently sought the
8   FBI's audio recording of a telephone call between Jefferson and Kritza.  According to
9   Jefferson, during that call he and Kritza "had a conversation about the money that was
10  missing" and "the line of credit that [Jefferson] did not know about."[17]  Jefferson
11  contends that Kritza admitted to "stealing a couple million" dollars of Jefferson's
12  money.[18]  Kritza denies that he made such statements.[19]

13       Jefferson now moves for a stay of this case while the FBI's investigation is
14  pending or, alternatively, for an indefinite stay of the discovery deadlines until the
15  investigation is complete.[20]

16                          ### III.  STANDARD OF REVIEW

17       Federal courts may defer "civil proceedings pending the completion of parallel
18  criminal prosecutions when the interests of justice seemed to require such action."[21]

19  _____

20       [14]Doc. 85-1 at 6.

21       [15]Doc. 76-1 at 2 ¶ 3.

22       [16]*Id.*

23       [17]Doc. 76 at 8; Jefferson's deposition transcript, Doc. 76-1 at 8.

24       [18]Doc. 76-1 at 8 (Jefferson testified that Kritza "admitted to stealing money, stealing a
25  couple million, and that he was trying to figure out a way to pay [Jefferson] back.").

26       [19]Doc. 83 at 6.

27       [20]Doc. 76 at 7.

28       [21]*United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (citations omitted).

                                      -4-

"The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made 'in light of the particular circumstances and competing interests involved in the case.'"[22]   Courts should consider the following six factors: (1) "the extent to which the defendant's fifth amendment rights are implicated;"[23] (2) "the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;" (3) "the burden which any particular aspect of the proceedings may impose on defendants;" (4) "the convenience of the court in the management of its cases, and the efficient use of judicial resources;" (5) "the interests of persons not parties to the civil litigation;" and (6) "the interest of the public in the pending civil and criminal litigation."[24]

## IV.  DISCUSSION

Generally speaking, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter."[25]   Under such circumstances, the civil proceeding could undermine the criminal defendant's "Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case."[26]   "The case for staying civil proceedings is 'a far weaker

---

[22]*Keating*, 45 F.3d at 324 (quoting *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir.1989)).

[23]*Molinaro*, 889 F.2d at 902.

[24]*Keating*, 45 F.3d at 325 (citing *Molinaro*, 889 F.2d at 903).

[25]*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980).

[26]*Id.* at 1376.

one' when '[n]o indictment has been returned[, and] no Fifth Amendment privilege is threatened.'"[27]

## A.   The Extent to Which This Case Implicates Kritza's Fifth Amendment Rights

Jefferson states that "it is conceivable that [Kritza] may well elect to exercise [his] Fifth Amendment rights" in this case, thereby thwarting" the parties' "efforts to obtain critical discoverable information."[28]  But this assertion is specious.  Jefferson filed his motion approximately one month before the April 10, 2015 discovery cut-off date, and the parties have already completed significant discovery.  Kritza states that he has already "appeared at a deposition, answered numerous discovery requests, and produced thousands of pages of documents, including all of his relevant emails," and not once has he invoked his Fifth Amendment rights.[29]  This factor weighs against granting a stay.

## B.   Alliance's Interest in Proceeding Expeditiously with this Case and the Potential Prejudice to Alliance of a Delay

Alliance argues that its case against Jefferson is a straightforward collection action that has been sidetracked when Jefferson combined it with an unrelated dispute between himself and Kritza.[30]  Alliance asserts that "it has a responsibility to its investors, depositors, and federal regulators to swiftly collect unpaid balances and recoup losses like attorneys' fees."[31]  Because there is no evidence indicating that an indictment is forthcoming, Alliance argues that it will be unfairly prejudiced by the

---

[27]*Molinaro*, 889 F.2d at 903 (quoting *Dresser Indus.*, 628 F.2d at 1376).  *See also S.E.C. v. Global Express Capital Real Estate Inv. Fund, I, LLC*, 289 F. App'x 183, 191 (9th Cir. 2008) ("The case for staying civil proceedings is weak when no indictment has been returned.").

[28]Doc. 76 at 12.

[29]Doc. 83 at 12.

[30]Doc. 80 at 8.

[31]*Id.* at 9.

1  indefinite delay that Jefferson requests.  These compelling arguments weigh heavily
2  against granting a stay.

3  **C.    The Potential Prejudice to Jefferson in Proceeding**

4          Jefferson argues that he will be prejudiced if he is required to proceed in this
5  case without the FBI's records, which he describes as "essential to all parties."[32]  He
6  also argues that this prejudice to his claims against Kritza outweighs Alliance's interest
7  in collecting the LOC amount allegedly due, because Kritza owes Jefferson upwards of
8  $2 million whereas the amount of the LOC was $500,000.[33]  Alliance disputes
9  Jefferson's claim that the FBI's records are essential to this case.  It notes that "all of
10 the parties who have been interviewed by the FBI are parties to this action . . . and
11 therefore Jefferson has had an opportunity to depose these same witnesses and
12 conduct discovery."[34]

13         The court finds that even if the unavailable FBI records might be helpful to
14 Jefferson's case, they are not essential.  Jefferson still has his own testimony about
15 what Kritza said to him that the fact finder can contrast with Kritza's contrary testimony.
16 Nevertheless, the possibility that Jefferson may not have access to helpful evidence
17 weighs in favor of granting the stay.

18 **D.    The Convenience of the Court in the Management of its Cases and the
       Efficient use of Judicial Resources**

19         Jefferson concludes that this factor weighs in favor of a stay without explaining
20 how or why.[35]  The court disagrees.  This court is responsible for employing the Federal
21 Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of

_____

[32]Doc. 76 at 12.

[33]*Id.* at 14.

[34]Doc. 80 at 12.

[35]Doc. 76 at 15.

-7-

1  every action and proceeding."[36]  Expeditious resolution of cases is therefore preferable
2  to delay of the court's docket.  Further, as more time progresses witnesses' memories
3  inherently dim, decreasing the likelihood of reaching the most just result.  When these
4  considerations are weighed against a delay of unknowable duration, this factor weighs
5  in favor of denying the stay.[37]

6  **E.    The Interests of Non-Parties to This Case**

7         All parties agree that there are no third-party concerns implicated by Jefferson's
8  motion.  The Court will therefore not consider this factor.

9  **F.    The Public Interest**

10        Jefferson cites *Douglas v. United States*, for the proposition that "[t]he public has
11  an interest in 'ensuring that the criminal process is not subverted by ongoing civil
12  cases.'"[38]  He argues that if a stay is not granted "this case will proceed to trial parallel
13  to the criminal case, leaving Jefferson no reasonable opportunity to offer a defense."[39]
14  Kritza responds, stating that Jefferson's concerns are misplaced because there is no
15  criminal case pending and the public has no established "interest in an uncompleted
16  FBI investigation."[40]  Jefferson disputes this contention, stating that the FBI's letter
17  confirms that "criminal proceedings have already begun."[41]

---

[36]Fed. R. Civ. P. 1.

[37]*See Estate of Hernandez-Rojas v. Customs & Border Patrol Agent 7663*,
No. 11-CV-0522-L DHB, 2012 WL 5429091, at *9 (S.D. Cal. Nov. 7, 2012) ("Given the
uncertainty as to whether any of the defendants will be indicted, it is not in the Court's interest
to grant Defendants' motion for stay.").

[38]Doc. 76 at 15 (quoting *Douglas v. United States*, No. C 03-04518 JW, 2006 WL
2038375, at *6 (N.D. Cal. July 17, 2006)).

[39]Doc. 76 at 15.

[40]Doc. 83 at 15.

[41]Doc. 86 at 11.

-8-

1    A criminal prosecution commences with "'the initiation of adversary judicial

2    criminal proceedings—whether by way of formal charge, preliminary hearing,

3    indictment, information, or arraignment."[42]  By these standards, criminal proceedings

4    against Kritza have not yet commenced, and it is unclear whether they will commence

5    in the future.  More importantly, Jefferson does not show that allowing this case to

6    proceed would "subvert" the potential criminal process, which makes this case

7    distinguishable from *Douglas*.[43]  This factor neither weighs in favor of nor against a stay.

8    **G.    Other Considerations**

9          **1.    Jefferson's rights under the Arizona Constitution**

10         Article II, Section 2.1, of the Arizona Constitution, which is part of the Victims' Bill

11   of Rights ("VBR"), provides in pertinent part that a crime victim has the right to "refuse

12   an interview, deposition, or other discovery request by the defendant, the defendant's

13   attorney, or other person acting on behalf of the defendant."[44]  Jefferson argues that as

14   a victim of a crime he has the right to a stay of civil discovery "during the pendency of a

15   related criminal case."[45]  This argument is meritless.  According to the Victims' Rights

16   Implementation Act ("VRIA"),[46] the VBR's implementing legislation,[47] the VBR's rights

17   "arise on the arrest or formal charging of the person or persons who are alleged to be

18

19

20   _____

21   [42]*Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008) (quoting *United States v.*

22   *Gouveia*, 467 U.S. 180, 188 (1984)).

23   [43]*See Douglas*, 2006 WL 2038375, at *5 (holding that allowing civil depositions "could

24   give an unfair preview of the Government's evidence, theories and strategies" for its criminal
     case.).

25   [44]Ariz. Const. art. II, § 2.1(A)(5).

26   [45]Doc. 76 at 5-7 (citing *State v. Lee*, 245 P.3d 919 (Ariz. Ct. App. 2011)).

27   [46]Chapter 40, Title 13 of the Arizona Revised Statutes.

28   [47]*See Lindsay R. v. Cohen*, 343 P.3d 435, 436 (Ariz. Ct. App. 2015).

1 | responsible for a criminal offense against a victim."[48]  Because Kritza has neither been
2 | arrested nor charged with any crime, the VBR has no application.  Further, even if the
3 | VBR applied, Jefferson would at most be entitled to refuse Kritza's discovery requests,
4 | not freeze all civil discovery outright.

5 |           **2.      Collateral estoppel**

6 |           The doctrine of *res judicata*, which defines the preclusive effect of a judgment, is
7 | comprised of two separate doctrines known as claim preclusion and issue preclusion.[49]
8 | Issue preclusion (otherwise known as collateral estoppel) "bars 'successive litigation of
9 | an issue of fact or law actually litigated and resolved in a valid court determination
10 | essential to the prior judgment,' even if the issue recurs in the context of a different
11 | claim."[50]  Jefferson relies on *Lizarraga v. City of Nogales*,[51] to argue that collateral
12 | estoppel considerations support granting a stay of this matter because, if a stay is not
13 | entered, there is a "high potential for inconsistent judgments."[52]  In *Lizarraga* the civil
14 | court action was stayed until after the plaintiff's parallel criminal trial, which initially
15 | ended in a mistrial.  Faced with the prospect of a retrial in the criminal case, the civil
16 | court entered another stay, in part to avoid the possibility of inconsistent judgments.[53]
17 | The court held that a stay of the civil case was necessary because, of the two cases,

---

[48]A.R.S. § 13-4402(A).  *See also State v.* Stauffer, 58 P.3d 33, 36 (Ariz. Ct. App. 2002) ("[A] crime victim's rights are specific to a crime committed upon that victim and arise only upon an arrest for or formal charging of that crime.").

[49]*White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012).

[50]*Id.*

[51]No. CV 06-474 TUC DCB, 2008 WL 4079991 (D. Ariz. Aug. 29, 2008).

[52]Doc. 76 at 12-13.

[53]*Lizarraga*, 2008 WL 4079991, at *3.

1   the criminal case was "of paramount importance to the victim, the Defendant, the
2   public, and the courts."[54]

3           The facts of this case are very different than those in *Lizarraga*.  Here, there is
4   no parallel criminal case, at least not yet.  Kritza has not been indicted.  Under these
5   circumstances the risk of inconsistent judgments is too speculative to justify a stay.

6                                    **V.  CONCLUSION**

7           After weighing the relevant considerations, the court concludes that a stay is not
8   warranted.  Although there is a possibility that Jefferson will be prejudiced by his
9   inability to obtain audio of his conversation with Kritza, that prejudice is tempered by the
10  fact that he is free to offer his own testimony about that conversation.  The potential
11  harm to Jefferson does not justify staying this action indefinitely until the FBI completes
12  its investigation.  If Jefferson acquires new evidence from the FBI at some point in the
13  future, he is free to move for relief at that time.  The motion at docket 76 is **DENIED**.
14          DATED this 1st day of July 2015.

15

16

17                                              /s/ JOHN W. SEDWICK
                                      SENIOR UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

27   _____
28          [54]*Id.* at *4.

-11-