1
2
3
4
5
6
7
8                      **UNITED STATES DISTRICT COURT**
9                         **DISTRICT OF ARIZONA**
10
11   **Western Alliance Bank,**                )
12                **Plaintiff,**               )        **2:14-cv-0761 JWS**
13          **vs.**                            )        **ORDER AND OPINION**
14   **Richard Jefferson,**                    )        **[Re: Motions at Dockets 81 and 96]**
15                **Defendant.**               )
16   ─────────────────────────────            )
17   **Richard Jefferson,**                    )
18                **Counter-claimant,**        )
     **vs.**                                   )
19   **Western Alliance Bank,**                )
20                **Counter-defendant.**       )
21   ─────────────────────────────            )
22   **Richard Jefferson,**                    )
23                **Third-party plaintiff,**   )
24          **vs.**                            )
25   **Theodore Kritza & Michelle Lee**        )
     **Kritza,**                               )
26                                             )
27                **Third-party defendants.**  )
28

## I.  MOTIONS PRESENTED

At docket 81 third-party defendants Theodore Kritza and Michelle Lee Kritza (collectively, "Kritza") move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure or, alternatively, an order establishing certain material facts as undisputed pursuant to Rule 56(g).  Kritza supports his motion with a statement of facts at docket 82.  Before responding to Kritza's motion, defendant, counter-claimant, and third-party plaintiff Richard Jefferson ("Jefferson") filed two motions at docket 96: a motion to amend the scheduling order to extend the deadline for amending pleadings and a motion for leave to amend his answer, counterclaim, and third-party complaint. At docket 97 Jefferson opposes Kritza's summary judgment motion, and at docket 99 he provides a separate statement of facts and controverting statement of facts.  At docket 98 Jefferson's counsel, Bryan L. Saalfeld ("Saalfeld"), submits a declaration pursuant to Rule 56(d).

Kritza opposes Jefferson's two motions at docket 106; plaintiff and counter-defendant Western Alliance Bank ("Alliance") opposes them at docket 107.  Kritza replies in support of his summary judgment motion at docket 111.  Jefferson replies in support of his motions at docket 117.  Oral argument was requested but would not assist the court.

## II.  BACKGROUND

This case began as a breach-of-,contract action that Alliance brought against Jefferson in state court in February 2014.  Alliance alleges that on October 5, 2004 it issued Jefferson a revolving line of credit in an original principal amount not to exceed $500,000 ("LOC") that Jefferson failed to pay by its maturity date.[1]  Alliance attached to its complaint the following documents as evidence of the parties' contractual relationship:

---

[1]Doc. 1-3 at 3 ¶ 6; *id*. at 4 ¶ 12.

1.      An October 5, 2004 Consumer Revolving Line of Credit agreement (loan number 0129104825, "loan 4825") with an October 5, 2005 maturity date;[2]

2.      A September 13, 2005 Change in Terms Agreement to loan 4825 that extended the LOC's maturity date to October 5, 2006;[3]

3.      A September 25, 2006 Change in Terms Agreement to loan 4825 that extended the LOC's maturity date to October 5, 2007;[4]

4.      An August 13, 2007 Change in Terms Agreement to loan 4825 that extended the LOC's maturity date to October 5, 2008;[5]

5.      An August 5, 2008 Change in Terms Agreement to loan 4825 that extended the LOC's maturity date to August 15, 2009;[6]

6.      An August 15, 2009 Change in Terms Agreement to loan 4825 that extended the LOC's maturity date to August 15, 2010;[7]

7.      An August 16, 2010 Consumer Revolving Line of Credit agreement (loan number 129125289, "loan 5289") with an August 15, 2011 maturity date;[8]

8.      A December 23, 2011 Promissory Note[9] and Business Loan Agreement[10] (loan number 0602129169, "loan 9169") with a November 15, 2012 maturity date;

---

[2]Doc. 1-4 at 5-13 (Exhibit A).

[3]*Id.* at 15-21 (Exhibit B).

[4]*Id.* at 23-27 (Exhibit C).

[5]*Id.* at 29-35 (Exhibit D).

[6]*Id.* at 37-43 (Exhibit E).

[7]*Id.* at 45-51 (Exhibit F).

[8]*Id.* at 53-59 (Exhibit G).

[9]*Id.* at 61-62 (Exhibit H).

[10]*Id.* at 64-70 (Exhibit I).

1

2

       9.     A November 15, 2012 Change in Terms Agreement to loan 9169 that extended the loan's maturity date to January 15, 2013;[11]

3

4

     10.    A January 15, 2013 Change in Terms Agreement to loan 9169 that extended the loan's maturity date to November 15, 2013.[12]

5 Alliance also attached to its complaint a December 20, 2013 document that it alleges is

6 a forbearance agreement between Alliance and Jefferson regarding loan 9169,[13] under

7 which Jefferson would make a $50,000 principal reduction payment in exchange for

8 Alliance's promise to forbear from exercising its remedies under the loan documents

9 through January 15, 2014.  Alliance alleges that after entering into this agreement

10 Jefferson failed to repay the LOC by this maturity date.[14]

11      Jefferson removed the case to this court,[15] filed his answer, and brought two

12 negligence counterclaims against Alliance.  In his answer Jefferson admits that he is

13 the borrower listed on the paperwork for above-referenced loans, but he claims that his

14 signature was forged.[16]  Jefferson's first counterclaim alleges that Alliance was

15 negligent in failing "to implement and/or follow appropriate procedures to verify the

16 authenticity of the signatures on documents purporting to name Jefferson" as a

17 borrower.[17]  His second counterclaim alleges that Alliance was negligent in supervising

18 and training its agents.[18]

19

20

21

22

23

24

25

26

27

28

     [11]*Id.* at 72-75 (Exhibit J).

     [12]*Id.* at 77-80 (Exhibit K).

     [13]*Id.* at 82-85.

     [14]Doc. 1-3 at 4 ¶¶ 10-12.

     [15]Doc. 1.

     [16]Doc. 14.

     [17]*Id.* at 16-17 ¶ 13.

     [18]*Id.* at 18 ¶ 20.

1    Jefferson then filed a ten-claim, third-party complaint against Kritza pursuant to

2    Rules 14 and 18, alleging that Kritza forged his name on the LOC documents and used

3    the LOC funds without his consent.[19]   Jefferson is a professional basketball player who

4    employed Kritza as his personal business manager from 2001 to 2013.[20]   Jefferson

5    concedes that during this time he granted Kritza authorization to access his financial

6    accounts, credit information, and related financial information.[21]   But he denies that he

7    authorized Kritza to sign his name on the LOC documents or to use the LOC funds for

8    personal purposes.[22]   Jefferson's third-party complaint alleges that this is exactly what

9    Kritza did: Kritza surreptitiously misappropriated the LOC funds for his own personal

10   use,[23] causing Jefferson "monetary losses in excess of $500,000."[24]   Jefferson's ten

11   causes of action against Kritza are for: (1) fraud/concealment; (2) breach of fiduciary

12   duty; (3) negligence; (4) breach of contract; (5) negligent misrepresentation; (6) unjust

13   enrichment; (7) accounting; (8) conversion; (9) contribution/indemnification; and (10) a

14   declaratory judgment regarding contribution/indemnification.

15   The court's July 2014 scheduling and planning order set an August 15, 2014

16   deadline for motions to amend pleadings[25] and, pursuant to the parties' proposal,[26] an

17   April 10, 2015 deadline for completion of discovery.[27]   On July 28 Jefferson amended

18

19   ───────────────────

[19]Doc. 16 at 3 ¶¶ 8, 10.

20   [20]Doc. 33 at 4 ¶ 13.

21   [21]*Id.* at 4 ¶ 13.

22   [22]*Id.* at 4 ¶ 12.

23   [23]*Id.* at 4-5 ¶ 14.

24   [24]*Id.* at 5 ¶ 15.

25   [25]Doc. 26 at 7.

26   [26]Doc. 22 at 5.

27   [27]Doc. 26 at 5.

28

his third-party complaint to name Kritza's wife as a third-party defendant.[28]  In April 2015 the parties extended the discovery cut-off until May 7, 2015, so that they could complete several depositions.[29]  The deadline for dispositive motions expired on May 29, 2015.[30]

Kritza now moves for summary judgment, arguing that Jefferson's initial disclosure statement fails to comply with Rule 26(a)(1)(A)(iii), that Jefferson may not pursue claims not alleged in his complaint, that Jefferson's third-party complaint fails to meet the standards of Rule 14, and that Jefferson's claims should be subject to a $500,000 offset.  Jefferson opposes Kritza's motion and moves to amend the scheduling order so that he can amend his answer, his counterclaim, and his third-party complaint to allege new facts, add two new affirmative defenses to his answer,[31] add eleven new counterclaims against Alliance,[32] and add five new third-party claims against Kritza.[33]

## III.  STANDARD OF REVIEW

Because Jefferson seeks to amend his pleadings after the deadline set out in the court's scheduling order, his motion is governed by Rule 16(b).[34]  Rule 16(b)(4) states

---

[28]Doc. 33.

[29]Doc. 91; Doc. 94.

[30]Doc. 95.

[31]*See* Doc. 96-3 at 28 (Jefferson proposes to add two new defenses: rescission and mistake).

[32]*See Id.* at 35-45 (Jefferson proposes to add eleven new counterclaims: (1) misrepresentation; (2) concealment; (3) non-disclosure; (4) violation of A.R.S. § 44-1521, *et seq.*; (5) constructive fraud; (6) negligent misrepresentation; (7) bad faith; (8) rescission; (9) declaratory judgment; (10) conversion; and (11) aiding and abetting).

[33]*See* Doc. 96-4 at 14-28 (Jefferson proposes to add five new third-party claims against Kritza: (1) fraud – non-disclosure; (2) fraud – misrepresentation; (3) constructive fraud; (4) violation of A.R.S. § 44-1521, *et seq.*; and (5) subrogation).

[34]*See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

that a "schedule may be modified only for good cause and with the judge's consent." District courts are "given broad discretion in supervising the pretrial phase of litigation, and [their] decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion."[35]  "Unlike Rule 15(a)'s liberal amendment policy, which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."[36]  "Courts within this Circuit 'have articulated and undertaken [a] three-step inquiry in resolving the question of "diligence" in the context of determining good cause under Rule 16[.]'"[37]  Under that inquiry the movant may be required to show (1) that "he was diligent in assisting the court in creating a workable Rule 16 order;" (2) that "his noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding his diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference;" and (3) that "he was diligent in seeking amendment of the Rule 16 order, once it became apparent that he could not comply with the order."[38] "While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's

---

[35]*Johnson*, 975 F.2d at 607 (omission in original) (internal quotation marks omitted).

[36]*Id.* at 609.  *See also* 6A Charles Alan Wright & Arthur R. Miller, *et al.*, Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.).

[37]*Morgal v. Maricopa Cnty. Bd. of Sup'rs*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (quoting *Grant v. United States*, No. 2:11-CV-00360 LKK, No. 2011 WL 5554878, at *4 (E.D. Cal. Nov. 15, 2011), adopted, 2012 WL 218959 (E.D. Cal. Jan. 23, 2012)).

[38]*Id.*

reasons for seeking modification . . . [i]f that party was not diligent, the inquiry should end.'"[39]

Kritza's motion is governed by Rule 56.  Under that rule, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[41]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[42]  However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[43]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[44]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[45]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for

---

[39]*In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson*, 975 F.2d at 609).

[40]Fed. R. Civ. P. 56(a).

[41]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[42]*Id.*

[43]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[44]*Id.* at 323.

[45]*Id.* at 323-25.

1   trial.[46]  All evidence presented by the non-movant must be believed for purposes of

2   summary judgment, and all justifiable inferences must be drawn in favor of the

3   non-movant.[47]   However, the non-moving party may not rest upon mere allegations or

4   denials, but must show that there is sufficient evidence supporting the claimed factual

5   dispute to require a fact-finder to resolve the parties' differing versions of the truth at

6   trial.[48]

7                                    **IV.  DISCUSSION**

8   **A.    Jefferson Has Not Shown Good Cause to Amend the Scheduling Order**

9           A Rule 16 scheduling order "'is not a frivolous piece of paper, idly entered, which

10  can be cavalierly disregarded by counsel without peril.'"[49]  "[A]mong the aims of Rule 16

11  are to prevent parties from delaying or procrastinating and to keep the case 'moving

12  toward trial.'"[50]  "Rule 16 helps to remove extraneous disputes from the case and serves

13  to expedite the determination of the merits, thereby saving time and expense for the

14  litigants and easing the burden on the courts by facilitating the handling of congested

15  dockets."[51]  One way that Rule 16 accomplishes these important goals is by dictating

16  four time limitations that every scheduling order must include—the time limit for

17  amending pleadings is included on this short list.[52]  "By limiting the time for

18  amendments, [Rule 16] is designed to offer a measure of certainty in pretrial

19

20  _____

21          [46]*Anderson,* 477 U.S. at 248-49.

22          [47]*Id.* at 255.

23          [48]*Id.* at 248-49.

24          [49]*Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D.

25  138, 141 (D. Me. 1985)).

26          [50]*Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

27          [51]6A Fed. Prac. & Proc. Civ. § 1522.

28          [52]Fed. R. Civ. P. 16(b)(3)(A).

proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'"[53]

Jefferson states that good cause exists to amend the scheduling order to allow him to amend his pleadings because after August 15, 2014, he discovered new facts giving rise to new claims and new defenses.[54]  With respect to Alliance, Jefferson states that he discovered that (1) loan 4825 matured on or before August 15, 2010, and was paid off on or before September 15, 2010;[55] (2) loan 5289 was not an amendment to loan 4825, and it was paid off on or before December 23, 2011;[56] (3) Alliance has a policy of discussing a loan's terms with a consumer before a disbursal is made, and Alliance violated that policy with respect to Jefferson;[57] (4) loan 9169 was not an amendment to an existing LOC;[58] and (5) Alliance has a policy of "requiring that the identity of the actual borrower be known," and Alliance violated that policy with respect to Jefferson.[59]  With regard to Kritza, Jefferson asserts that he discovered various new facts after August 15, 2014, including the fact that Kritza "'owned' the Alliance line of credit;"[60] used the Alliance lines of credit to further his own business ventures; owes Jefferson $497,770.62 for loan 9169; and owes Jefferson $1.46 million.[61]

---

[53]*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (citing Fed. R. Civ. P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)).

[54]Doc. 96 at 3.

[55]*Id.* at 5-6.

[56]*Id.* at 6.

[57]*Id.* at 6-7.

[58]*Id.* at 8.

[59]*Id.*

[60]*Id.* at 12.

[61]*Id.* at 13.

**1.     This issue was foreseeable when the scheduling order was entered**

The first diligence factor focuses on whether Jefferson was diligent in discharging his duty to assist the court in crafting a scheduling order that fulfils the mandate of Rule 1—a just, speedy, and inexpensive determination of this action.[62]  The second factor focuses on whether Jefferson's inability to comply with the scheduling order's deadline occurred "because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference."[63]  Jefferson's motion does not address either of these factors.

Jefferson participated in a Rule 26(f) conference in June 2014.[64]  After reviewing the parties' status report from that conference, the court entered a scheduling order that gave the parties one month to amend pleadings.  This deadline was about eight months before the close of discovery.[65]  Thus, when the scheduling order was entered it was obvious that the parties would not have an opportunity to complete discovery before amending their pleadings.  Yet Jefferson failed to raise any concerns about this schedule with the court.  As Kritza correctly observes, "Jefferson knew in July 2014 that he needed to conduct significant discovery on the very topics he now seeks to add to his pleadings, and yet, he made no effort to obtain a scheduling order that allowed for amendment after that discovery was completed."[66]  By not proposing a later cut off for amending pleadings, and by not objecting to the court's scheduling order, Jefferson knew he might be precluded from raising new claims or defenses based on that

---

[62]*See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citing *Forstmann v. Culp*, 114 F.R.D. 83, 84 (M.D.N.C. 1987)).

[63]*Morgal*, 284 F.R.D. at 460 (internal quotation omitted).

[64]Doc. 22 at 2.

[65]It is appropriate to require amendment prior to the close of discovery so that discovery is conducted around the issues framed by the pleadings.

[66]Doc. 106 at 5-6.

1
2
3

discovery.  The current issue before the court was foreseeable when the scheduling order was entered, and if Jefferson wished to retain the ability to amend his pleadings at a later date, he was not diligent in timely making that wish known to the court.

4

### 2.   Jefferson's diligence in seeking to amend the scheduling order

5
6
7
8
9
10

The third diligence factor focuses on whether Jefferson was diligent in seeking to amend the scheduling order.  Jefferson filed his motion to amend the scheduling order approximately eight months after the deadline to amend pleadings expired.  A substantial portion of Jefferson's motion is devoted to describing the allegedly new facts that he learned through discovery, but his motion does not reveal exactly *when* he discovered any of them.[67]

11
12
13
14
15
16
17
18
19
20
21

Alliance and Kritza respond stating that Jefferson was aware of these allegedly-new facts long before he filed his motion.  Alliance notes that it emailed Jefferson on October 11, 2013, informing him that his LOC "had three different account numbers due to bank changes in documentation" and providing him with copies of his bank statements.[68]  Then, on December 18, 2013, when the parties were discussing the forbearance agreement, Alliance provided Jefferson's counsel with copies of all of the relevant loan documents.[69]  Alliance also asserts that on December 8, 2014, it produced to Jefferson a copy of the loan 4825 document that indicates that the loan was marked as "paid" on September 15, 2010.[70]  For his part, Kritza argues that on October 23, 2014, he produced to Jefferson a copy of the power-of-attorney form and

22
23
24
25
26
27
28

[67]Doc. 96 at 5-14.

[68]Doc. 107-1 at 44.

[69]Doc. 107 at 6; Doc. 107-2 at 33-107.

[70]Doc. 107 at 12; Doc. 107-2 at 127.

1    documents related to the disputed $2 million loan that Jefferson now seeks to
2    challenge.[71]

3         In reply, Jefferson does not deny receipt of these documents, but asserts that his
4    Rule 11 obligations required him to confirm their content with deposition testimony
5    before filing this motion.  He contends that he first confirmed the Alliance-related facts
6    after deposing two witnesses: Gina McRostie ("McRostie"), who was deposed on
7    March 10,[72] and Warren Forsythe ("Forsythe"),[73] who was deposed on March 27.[74]  He
8    asserts that he first confirmed "the extent of Kritza's fraudulent activities"[75] when Kritza
9    was deposed on January 23.[76]

10        Because most of the facts upon which Jefferson's current motion relies were
11    known to Jefferson many months ago, Jefferson has not shown that he was diligent in
12    seeking to amend the scheduling order.  Jefferson and his counsel had Alliance's loan
13    documents that referenced three separate loans before this action commenced.[77]  For
14    instance, the final loan document for loan 4825 describes an existing indebtedness that
15    was originally dated October 5, 2004, and had an original maturity date of October
16    2005, which was later extended to October 2006, to October 2007, to August 2008, to
17    August 2009, and then (with that document) to August 2010.[78]  In contrast, the initial

---

[71]Doc. 106 at 7.

[72]Doc. 117-1 at 73.

[73]Doc. 117 at 6.

[74]Doc. 117-2 at 44.

[75]Doc. 117 at 5.

[76]Doc. 117-1 at 10.

[77]*See Parker*, 204 F.3d at 340-41.

[78]Doc. 107-2 at 69.

1  loan document for the next loan (loan 5289) does not list an existing indebtedness.[79]

2  The same is true regarding the initial loan documents for loan 9169.[80]  And even if

3  discovery revealed new facts about Alliance's policies, this evidence is relevant to

4  Jefferson's negligence claim[81]—a claim that Jefferson has already pleaded.  These

5  allegedly new facts do not provide good cause to amend the scheduling order.

6       A similar problem exists with regard to the allegedly new facts that Jefferson

7  learned about Kritza.  Even if Kritza testified that he "'owned' the Alliance line of credit,"

8  misappropriated the LOC funds, and owes the LOC funds to Jefferson, none of these

9  facts justify amending the scheduling order because they are relevant to causes of

10  action that Jefferson has already pleaded.  Finally, Jefferson obtained documents

11  related to the alleged $2 million loan on October 23, 2014, and he deposed Kritza about

12  those documents back in January.  It was not until after Kritza filed his current motion

13  for summary judgment that Jefferson decided to seek to amend his pleadings.

14  Jefferson was not diligent in seeking to amend the scheduling order.

15       Because Jefferson has failed to demonstrate good cause for modifying the

16  scheduling order, the court will deny his motion.

17  **B.    Jefferson's Rule 26 Damages Disclosures Are Insufficient**

18       Rule 26(a)(1)(A)(iii) requires each party to disclose "a computation of each

19  category of damages claimed by the disclosing party" and the documents on which

20  each computation is based, "including materials bearing on the nature and extent of

21  injuries suffered."  "Rule 26 does not elaborate on the level of specificity required in the

22  initial damages disclosure."[82]  At the very least, however, the disclosing party "should

23

24       [79]*Id.* at 76.

25       [80]*Id.* at 91, 93.

26       [81]Doc. 96-3 at 32 ¶ 20; *id.* at 33 ¶ 24.

27       [82]*City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal.

28  2003).

-14-

1    provide its assessment of damages in light of the information currently available to it in

2    sufficient detail so as to enable" the other parties to understand the contours of  their

3    "potential exposure and make informed decisions as to settlement and discovery."[83]

4    "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any

5    information required to be disclosed by Rule 26(a) that is not properly disclosed" unless

6    the failure was substantially justified or harmless.[84]  Less severe sanctions may also be

7    imposed on a non-disclosing party "[i]n addition to or instead of" exclusion.[85]

8         In his first two Rule 26 disclosure statements, Jefferson stated that he has

9    "suffered general and special damages in excess of $500,000" as a result of Alliance

10    and Kritza's unspecified "actions."[86]  Krtiza, through counsel, informed Jefferson that his

11    disclosure does not comply with Rule 26(a)(1)(A)(iii) because it fails to satisfy the

12    "computation" requirement, fails to differentiate between damages allegedly caused by

13    Kritza and Alliance, fails to disclose the categories of damages that Jefferson is

14    seeking, and fails to be supported by any documents.[87]  In response, Jefferson

15    submitted a second supplemental disclosure statement that states his damages as

16    follows:

17         As a direct and proximate result of Counter-Defendant and Third-Party
         Defendant's actions, Jefferson has suffered general and special damages
18         of at least $2,000,000.  Jefferson reserves the right to supplement this
         disclosure as appropriate. Jefferson's damages are supported by
19         testimony of [Todd] Eley, Kritza and Jefferson during their respective
         depositions, by exhibits to the depositions of Eley, Kritza and Jefferson,
20         and by documents, electronically stored information and tangible things
         referred to in the proceeding section.[88]

21

22    _____

23    [83]*Id.* at 221.

24    [84]*Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).

25    [85]Fed. R. Civ. P. 37(c)(1)(A)-(C).

26    [86]Doc. 82-1 at 21, 32.

27    [87]Doc. 81-1 at 41.

28    [88]Doc. 82-1 at 69.

1   After Kritza's counsel complained that this disclosure does not cure any of the

2   previously-identified deficiencies, Jefferson's counsel wrote a letter to Kritza's counsel

3   stating that they were still in the process of confirming the extent of Jefferson's

4   damages, but "at minimum, Jefferson seeks from Third Party Defendant Theodore

5   Kritza the repayment of at least $2,000,000 he admits taking, including his responsibility

6   as the acknowledged 'Debtor' for the balance owed on unsecured commercial loan

7   #602129169 at Alliance Bank of Arizona in the amount of $497,770.62."[89]  Jefferson's

8   counsel stated that this calculation is supported by "testimony of Eley, Kritza and

9   Jefferson during their respective depositions, by exhibits to the depositions of Eley,

10  Kritza, and Jefferson, and by documents, electronically stored information and tangible

11  things referred to in the proceeding section."[90]

12      Kritza argues that Jefferson's damages disclosure violates Rule 26, and on that

13  basis he should be barred from presenting any evidence of damages at trial.  He moves

14  for summary judgment on all ten of Jefferson's claims against him because "[w]ithout

15  evidence of damages, Jefferson's claims fail."[91]  Alternatively, Kritza seeks an order

16  from the court pursuant to Rule 56(g) establishing as undisputed the scope of

17  Jefferson's damages.

18      The court finds that Jefferson's damages disclosure does not comply with

19  Rule 26(a)(1).  It is insufficient for Jefferson to disclose that he is seeking unspecified

20  "special damages;" he must disclose the nature of each category of damages he is

21  seeking so that Kritza can understand the contours of his potential exposure.[92]

22  _____

23      [89]*Id.* at 83.

24      [90]*Id.* at 83-84.

25      [91]Doc. 81 at 2.

26      [92]*Tutor-Saliba Corp.*, 218 F.R.D. at 221 ("Plaintiff should provide its assessment of
27  damages in light of the information currently available to it in sufficient detail so as to enable
    each of the multiple Defendants in this case to understand the contours of its potential
28  exposure and make informed decisions as to settlement and discovery.").

1   Jefferson must also disclose a computation for each category of damages.[93]  He cannot
2   do what he has done: lump all of his damages together without explaining his
3   calculations.

4        The Ninth Circuit has identified five factors that district courts should consider in
5   deciding whether to impose case-dispositive, exclusion of evidence sanctions: "(1) the
6   public's interest in expeditious resolution of litigation; (2) the court's need to manage its
7   docket; (3) the risk of prejudice to [the other parties]; (4) the public policy favoring
8   disposition of cases on their merits; and (5) the availability of less drastic sanctions."[94]
9   "[F]actors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3
10  and 5, prejudice and availability of less drastic sanctions, are decisive."[95]  The most
11  critical consideration is "whether the discovery violations threaten to interfere with the
12  rightful decision of the case.  While contumaciousness toward the court needs a
13  remedy, something other than case-dispositive sanctions will often suffice."[96]

14       Despite Jefferson's discovery violation, excluding his damages evidence and
15  thereby ending his case against Kritza would be an unduly harsh sanction at this stage
16  of the litigation.  Fortunately for Jefferson, a trial date has not yet been set, and it is
17  therefore unlikely that his inadequate disclosures will interfere with a rightful decision in
18  this case.  Although Kritza has thus far been prejudiced by Jefferson's actions, that
19  prejudice will likely be remedied by requiring Jefferson to supplement his Rule 26
20  disclosures within 21 days to bring them in compliance with this order.  If Jefferson is
21  unable to do so, the court will consider more drastic sanctions.

22  _____

23       [93]*Allstate Ins. Co. v. Nassiri*, No. 2:08-CV-00369-JCM, 2011 WL 2977127, at *4 (D. Nev.
24  July 21, 2011) ("The word 'computation' contemplates some analysis beyond merely setting
    forth a lump sum amount for a claimed element of damages.").

25       [94]*Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir.1997)

26       [95]*Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (citing
27  *Adriana International Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990)).

28       [96]*Id.* at 1057 (internal quotation omitted).

-17-

1  **C.    Jefferson's Claims That Are Unrelated to the LOC**

2       Rule 8(a)(2) states that all claims for relief must contain "a short and plain

3  statement of the claim."  This statement must "'give the defendant fair notice of what

4  the . . . claim is and the grounds upon which it rests.'"[97]  "[O]nce a claim has been

5  stated adequately, it may be supported by showing any set of facts consistent with the

6  allegations in the complaint."[98]

7       Kritza argues that he is entitled to summary judgment on any of Jefferson's

8  claims that are unrelated to the LOC, because he does not allege any such claims in

9  his third-party complaint.  The target of Kritza's argument is a March 6, 2015 letter from

10  Jefferson's counsel in which he states that Jefferson is seeking damages related to the

11  LOC and, "at a minimum . . . the repayment of at least $2,000,000 [Kritza] admits to

12  taking."[99]  Jefferson responds, arguing that his third-party complaint gives Kritza fair

13  notice of his claims that are unrelated to the LOC in two ways: (1) it alleges that Kritza

14  began performing services for Jefferson in 2001 (before the LOC existed);[100] and (2) his

15  breach-of-contract claim alleges that Kritza breached his duty of good faith and fair

16  dealing by, among other things, "forging Jefferson's signature on certain various

17  documents."[101]

18       Jefferson's arguments lack merit.  With regard to his former argument,

19  Jefferson's mere allegation that Kritza had performed services for him since 2001

20  clearly does not put Kritza on notice of any claims.  And with regard to his latter

21  argument, Jefferson's allegation regarding Kritza's forgery of "certain various

22  documents" does not adequately allege that Kritza forged any documents that are

23  _____

24       [97]*Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

25       [98]*Id.* at 546.

26       [99]Doc. 82-1 at 83.

27       [100]Doc. 33 at 4 ¶ 13.

28       [101]*Id.* at 7 ¶ 35.

1   unrelated to the LOC.  In fact, Jefferson's complaint specifies the documents that Kritza

2   allegedly forged: Exhibits A-K of Alliance's complaint.[102]

3         Reading Jefferson's third-party complaint as a whole, Jefferson does not put

4   Kritza on fair notice of any claims relating to forged documents that are unrelated to the

5   LOC.  As a result, no such claims are part of Jefferson's third-party action against

6   Kritza.  Kritza's motion for summary judgment is therefore denied as moot, because a

7   party may only move for summary judgment on claims that have actually been

8   pleaded.[103]

9   **D.   Jefferson's Third-Party Claims Are Proper**

10         Rule 14 sets out the procedures that govern when a defending party may bring a

11   complaint against a third party, otherwise known as impleader.[104]  "The the third-party

12   complaint is in the nature of an indemnity or contribution claim."[105]  Rule 14 "permits

13   defendant only to implead a person 'who is or may be liable' to the third-party plaintiff

14   for all or any part of 'the claim against it.'"[106]  "A third-party claim may be asserted under

15   Rule 14(a)(1) only when the third party's liability is in some way dependent on the

16   outcome of the main claim or when the third party is secondarily liable to the defending

17   party."[107]  "Once a court has determined that a proper third-party claim has been

18

19

20   [102]*Id.* at 3 ¶ 9.  Jefferson later alleges that Kritza forged "documents relating to the
LOC."  *Id.* at 4 ¶ 12 ("In January 2014, Jefferson obtained documents relating to the LOC from
21   Alliance which revealed Jefferson's forged signature, including, but not limited to, Exhibits A-K
to Appendix to Alliance's Complaint.").
22

23   [103]Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each
claim or defense—or the part of each claim or defense—on which summary judgment is
24   sought.").

25   [104]6 Fed. Prac. & Proc. Civ. § 1441.

26   [105]*Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008).

27   [106]6 Fed. Prac. & Proc. Civ. § 1441 (quoting Fed. R. Civ. P. 14(a)(1)).

28   [107]*Id.* § 1446.

asserted, it should allow joinder [pursuant to Rule 18] of any other claims the third-party plaintiff may have against the third-party defendant."[108]

Kritza argues that Jefferson's third-party complaint against him violates Rule 14, because Jefferson is essentially claiming that "Alliance has sued the wrong person."[109] Kritza therefore contends that his alleged liability to Alliance is not dependant on Alliance's underlying claim against Jefferson.  Jefferson responds, arguing that the jury may find that even if Kritza "had the apparent agency to bind Jefferson to the purported Alliance lines of credit," in reality he was acting outside the scope of his agency and would therefore be liable to Jefferson for indemnification.[110]  Kritza does not challenge the legal validity of Jefferson's theory; he instead asserts that this theory is not alleged in Jefferson's complaint, and Jefferson does not point to facts in support of it in his opposition to Kritza's motion.[111]

Kritza is wrong.  Jefferson alleges that Kritza acted outside the scope of his authority in extending the LOC,[112] and he offers various deposition testimony in support

---

[108]*Id.* § 1452.  *See also* Fed. R. Civ. P. 18(a) ("A party asserting a . . . third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.").

[109]Doc. 81 at 13.

[110]Doc. 97 at 15.  *See also Miller v. Mason-McDuffie Co. of S. California*, 739 P.2d 806, 811 (Ariz. 1987) ("In order to hold a principal liable for an agent's acts on a theory of apparent authority, the third party must show that his reliance upon the agent's apparent authority was reasonable."); Restatement (Second) of Agency § 400, Comment e (1958) ("An agent who, in violation of his contractual duty, acts in an unauthorized manner or fails to act, and who thereby subjects his principal to a suit by a third person, is subject to liability for the expenses of a reasonable defense by the principal and for the damages which the principal is required to pay.").

[111]Doc. 111 at 10.

[112]*See* Jefferson's Third-Party Complaint, Doc. 33 at 4 ¶ 13 ("[A]t no point did Jefferson provide his consent as it relates to T. Kritza's personal and unauthorized use of monies relating to the LOC as alleged by Alliance."); *id.* at 9 ¶ 56 ("Throughout the purported Line of Credit's existence, T. Kritza unlawfully obtained possession of the LOC Funds when T. Kritza unlawfully, without consent or authority, fraudulently caused Alliance and its agents, to authorize a purported amendment and extension to the purported Line of Credit.").

-20-

1   of this claim.[113]  Jefferson's ninth cause of action against Kritza seeks contribution

2   and/or indemnification, and his tenth cause of action seeks a declaratory judgment

3   regarding the same.[114]  These are precisely the sorts of claims that are allowed under

4   Rule 14(a).  Because Jefferson alleges two third-party claims against Kritza that are

5   proper under Rule 14(a), joinder of Jefferson's remaining claims is proper under

6   Rule 18(a).  Kritza's motion is denied.

7   **E.    Kritza's Claimed Offset**

8          According to Kritza, it is undisputed that whatever balance he owes Jefferson

9   should be offset by two amounts: (1) the $102,000 that Kritza has already paid

10  Jefferson and (2) approximately $400,000 in agent fees that have been forgiven.[115]  He

11  points to Jefferson's admission that Kritza deposited $102,000 into Jefferson's bank

12  account,[116] his testimony that his agent, Todd Eley ("Eley"), has forgiven about

13  $400,000 in agent fees,[117] and Jefferson's testimony that both sums would "go to pay

14  down whatever money was taken."[118]  Jefferson responds that he never agreed that

15  these sums would be used to offset amounts that were taken from him,[119] and

16  therefore, there exists a genuine issue of material fact as to whether such an

17  agreement was made.

18         The evidence upon which Krtiza's argument relies is ambiguous.  Although

19  Jefferson testified that it was his contention that the above sums "would go to pay down

20

21         [113]Doc. 97 at 15 (citing Doc. 99 at 4 ¶ 18).

22         [114]Doc. 33 at 10-11.

23         [115]Doc. 81 at 15.  One of Kritza's affirmative defenses is that "Jefferson's claims are
24  barred, in whole or in part, by payment."  Doc. 43 at 8 ¶ 70.

25         [116]Doc. 82-1 at 93; *id.* at 106-07.

26         [117]*Id.* at 101.

27         [118]*Id.* at 107 lns. 2-9.

28         [119]Doc. 97 at 17 (citing Jefferson's deposition, doc. 99-1 at 80).

whatever money was taken," the basis for Jefferson's contention is unclear.  Kritza

alleges that these sums were paid to Jefferson as part of some sort of settlement

agreement,[120] but he does not present the court with a copy of the agreement or with

testimony regarding the agreement's terms.  Disputed issues of fact preclude summary

judgment on Kritza's claimed offset.

### V.  CONCLUSION

Based on the preceding discussion, Kritza's motion at docket 81 is **DENIED,** and

Jefferson's motions at docket 96 are **DENIED**.  Jefferson is **ORDERED** to supplement

his Rule 26 disclosures within 21 days to bring them in compliance with the standards

identified in this order.

DATED this 23rd day of July 2015.

_____
/s/

JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

[120]Doc. 111 at 11.