**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **Western Alliance Bank,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **2:14-cv-0761 JWS** |
| | ) | |
| **vs.** | ) | **ORDER AND OPINION** |
| | ) | |
| **Richard Jefferson,** | ) | **[Re: Motions at Dockets 108 and 110]** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| **Richard Jefferson,** | ) | |
| | ) | |
| **Counter-claimant,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Western Alliance Bank,** | ) | |
| | ) | |
| **Counter-defendant.** | ) | |
| | ) | |
| | ) | |
| **Richard Jefferson,** | ) | |
| | ) | |
| **Third-party plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Theodore Kritza & Michelle Lee Kritza,** | ) | |
| | ) | |
| **Third-party defendants.** | ) | |

## I.  MOTIONS PRESENTED

At docket 108 third-party defendants Theodore Kritza and Michelle Lee Kritza ("Kritza") move for an order precluding opinion testimony from William Flynn ("Flynn"), a forensic document examiner retained by defendant, counter-claimant, and third-party plaintiff Richard Jefferson ("Jefferson").  At docket 110, plaintiff Western Alliance Bank ("Bank") also moves to preclude opinion testimony from Flynn.  Jefferson opposes both motions in a single response at docket 137.  Kritza's reply is at docket 145.  Bank did not file a reply.  Oral argument was requested but would not assist the court.

## II.  BACKGROUND OF THE LAWSUIT

The court has described the background giving rise to this litigation in detail in the order at docket 183.  It need not be repeated here.  Suffice it to say for purposes of the present motion that Bank sued Jefferson to recover an unpaid debt evidenced by or reflected in various documents attached to its complaint.  In his answer, Jefferson admitted that he is the borrower listed in the paperwork, but alleged that his signature on the documents was forged.  In his third-party complaint against Kritza, Jefferson recites, "Jefferson affirmatively believes that Exhibits A-K [to Bank's complaint] are forgeries, signed without his consent or authorization by Third-Party Defendant Theodore Kritza."[1]  Jefferson retained Flynn as a handwriting expert to examine the signatures whose authenticity he disputes.

---

[1]Doc. 33 at ¶ 9.

### III.  DISCUSSION

**A.  Background Of The Motions at Dockets 108 and 110**

The court entered a Scheduling Order at docket 26 which set the date for Bank's expert disclosures on September 5, 2014, the date for Jefferson's expert disclosures on October 3, 2014, and rebuttal reports on November 4, 2014.[2]  Thereafter the parties twice stipulated to extend those deadlines.  The court approved the stipulations.  The order at docket 57 approving the second stipulation set the deadline for Jefferson's expert disclosures on November 10, 2014, Kritza's expert disclosures on December 10, 2014, and the deadline for rebuttal expert disclosures on January 6, 2015.

Of course, the deadlines for expert disclosures are an important consideration in setting a deadline for the close of discovery.  The Scheduling Order at docket 26 set the deadline for completion of discovery on April 10, 2015.  On April 10, the parties stipulated at docket 91 to extend the date for taking the depositions of lay witnesses Corey Hoff, James Tucciarone, Richard Jefferson, Richard Murnick and Daniel Kelly until various specific dates, the latest of which was May 6, 2015.[3]  The parties also stipulated to extend the deadlines for discovery motions and dispositive motions to reflect the extension of the discovery deadline.  The court approved the stipulation in an order at docket 94.  Thus, with the exception of the depositions of the five specified

---

[2]No deadline was set for Kritza to disclose an expert report because the parties' underlying report upon which the court relied was based on a meeting held prior to the appearance of Kritza in the action.

[3]The parties subsequently stipulated at docket 103 and jointly moved at docket 104 to extend the date for Daniel Kelly's deposition to May 20, 2015.  The requested extension was approved by the court in the order at docket 105.

witnesses, discovery closed on April 10, 2015.

Jefferson made a timely expert disclosure on November 10, 2014, ("First

Report") identifying Flynn as an expert forensic document examiner, setting out his c.v.,

and describing Flynn's examination of six signatures known to be genuine and his

examination of 37 questioned signatures.  The First Report also provided Flynn's

conclusions:

> Based on my knowledge, experience, and the forensic examination of the
> questioned Items Q(1-37) and known Items K(1-6), the following
> conclusions were reached:
>
> 1.    The known signatures of Richard Jefferson appearing on Items
>       K(4-6) (his post-NBA style of signature) are in agreement with one
>       another.  That is to say, there are consistent letterforms, sizes and
>       movements associated with these three signatures, even though
>       they have been executed of over a period of more than 3 years.
>
> 2.    The 37 questioned signatures, however, are made in ways that are
>       consistently different than the K(4-6) signatures.
>
> 3.    If Mr. Jefferson's signature style has remained consistent with
>       those exhibited in Items K(4-6) during the period in question (2004-
>       2013), then there is strong forensic evidence indicating that the
>       signatures in question are the product of another writer.
>
> 4.    I would request that additional normal-course-of-business
>       signatures of Mr. Jefferson be obtained that are unquestionably his
>       and cover the period in time 2004 through 2013.  If such signatures
>       can be located and submitted for forensic examination, it is likely
>       that a final determination as to authorship of the questioned
>       signatures can be obtained.[4]

The First Report suggests that, given an assumption about how representative

---

[4]Doc. 108-1 at 6-7.  It will be noted that Flynn's statement in Item 1 to the effect that the
three known items spanned a period of three years is inconsistent with Flynn's description of
the items.  He describes K4 as a document dated July 21, 2010, item K5 as an undated
document, and item K6 as a document dated 10-9-12, establishing a time span of only 2 years
and 2 months.

Items K(4-6) may be, there would be strong evidence that the questioned documents were forged.  However, the First Report does not actually conclude that any of the questioned documents are forgeries.  The First Report was the only expert witness disclosure from Jefferson available to Kritza prior to the date his own expert disclosure was due on December 10, 2014.  Given the absence of probative value in Flynn's conclusions in the First Report, it is not surprising that Kritza did not retain an expert to provide expert testimony regarding the signatures.

On March 13, 2015 Kritza obtained a subpoena directing Flynn to provide the documents on which the First Report relied and then noticed Flynn's deposition for April 9, 2015.  Responding, on March 25, 2015, Jefferson disclosed the documents relied on by Flynn in the First Report, and also disclosed a second report from Flynn dated March 25, 2015 ("Second Report") together with the additional documents relied on in the Second Report.[5]  The Second Report reflects Flynn's examination of 46 questioned items and 20 items known to contain Jefferson's signature as well as one item known to contain the handwriting and signatures of Corey Hoff.  What may be Hoff's signature appears as a witness' signature on the first questioned item, a durable power of attorney dated August 1, 2003, a document of great significance in this litigation.

The Second Report is substantially more significant than the First Report.  In it Flynn announces the following conclusions, among others:

2. As a result of my examination I have concluded that, to a high degree of probability, the "Richard Jefferson" signatures in question appearing on Items Q(1-41) and Q(43-46) were not executed by the maker of the known Richard Jefferson signatures.  The

---

[5] A copy is at doc. 110-3.

> questioned signature appearing on Item Q-42 was too faint to see the fine detail needed to reach a conclusion as to authorship.
>
> 3.    On March 14, 2015 I received an email attachment from Mr. Saalfeld marked as the Cannon Street Interview Report dated 3/14/15. This document contained known handwriting and signatures of Mr. Corey Hoff. The signatures contained in this file were then compared to the questioned Corey Hoff signature appearing on Item Q-1. In this exam significant differences were noted in the "Hoff" signature appearing on Item Q-1 and the "early version" of Mr. Hoff's signature. As a result of this analysis it is considered probable that the maker of the known Corey Hoff signatures on Item K-21 did not execute the Hoff signature appearing on Item Q-1.[6]

Flynn was deposed as scheduled on April 9, 2015. During the deposition, he testified that he probably began asking plaintiff's lawyer, Mr. Saalfald, for additional known signatures shortly after he issued the First Report and that Saalfald assured him "they would make every effort they could."[7] Flynn testified that he received the additional known Jefferson signatures on March 17, 2015, and the Hoff writing on March 23, 2015.[8]

Jefferson supplemented his expert disclosures with the Second Report and the various signature-bearing documents on March 26, 2015,[9] more than four months after Jefferson's expert disclosures were required.[10] Bank and Kritza contend that because the Second Report and all of the known signature-bearing documents were untimely

---

[6]*Id.* at 14.

[7]Deposition of William J. Flynn, extract provided at doc. 108-1 at 60-61 (pp. 31-32 of the deposition transcript).

[8]*Id.* at 59-60 (pp. 29-30 of the deposition transcript).

[9]Opposition, doc. 137 at 5.

[10]Order at doc. 57.

disclosed, the court should exclude Flynn's testimony in its entirety.  Jefferson argues that for several reasons, the court should not exclude Flynn's testimony.

The arguments by Bank and Kritza implicate several provisions of the Federal Rules of Civil Procedure.  The first is Rule 26(b)(2)(B) which, as pertinent here, requires that expert disclosures include:  "(1) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them."  The second is Rule 26(a)(2)(D) which requires the parties to make their expert disclosures "at the times and in the sequence that the court orders."  The third is Rule 37(c)(1) which states that if a party fails to provide information as required by Rule 26(a) "the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless."  It must be noted that instead of or in addition to this exclusionary sanction a court may impose other appropriate sanctions.[11]

**B.  Testimony Based on the First Report**

Both Kritza and Bank contend that the First Report and testimony corresponding thereto should be excluded.  The argument for exclusion of the First Report and related testimony rests on the asserted failure of Jefferson to disclose the information required by Rule 26(a)(2)(B).  In particular, it is asserted that there was no timely disclosure of all of Flynn's opinions, no disclosure of the "basis and reasons" for Flynn's opinions, no disclosure of "the facts or data considered by [Flynn]", and no disclosure of documents

---

[11]Fed. R. Civ. P. 37(c)(1)(C).

that will be used to "summarize and support" Flynn's opinions.

Movants' papers are correct to suggest that the First Report does not disclose all of Flynn's opinions.  What the First Report says is that if an assumption is made regarding the duration of a certain signature style *then* there would be "strong evidence" of forgery.  This is not a complete statement of Flynn's opinions, for that does not emerge until the presentation of the Second Report.  As the court sees the issues, the First Report and testimony based on it would not be admissible for the purpose of showing that any of the questioned documents were forged, because the First Report does not, and cannot as seen in Flynn's own conclusions, actually express an opinion on that issue.  In general, the court agrees with Kritza's argument[12] that testimony based on the First Report is not sufficiently reliable to be admissible under Rule 702 and that any probative value it might conceivably have is substantially outweighed by the risk of confusing the jury which would require its exclusion under Rule 403.  Testimony based on the First Report will not be permitted.  Thus, the issue becomes whether under all of the circumstances, testimony based on the Second Report and associated supplementary materials should be admitted.

**B.  Testimony Based on the Second Report**

The court now considers the Second Report and the various supplementary documents showing Jefferson's signatures.  One reason Jefferson contends that the delayed disclosure of the Second Report and supplementary materials does not bar

---

[12]Doc. 108 at 10-12.

their use is that they were "proper supplements."[13]  Jefferson cites Rule 26(e) and an Illinois district court case, *Talbert v. City of Chicago*[14] to support this argument.

Jefferson does not elaborate on the proposition that the Second Report and supplementary materials were a  timely supplement to the First Report based on Rule 26(e).  An examination of the relevant rules shows that Jefferson's reliance on Rule 26(e) is unavailing.  That rule provides that supplements relating to expert disclosures must be made by the time disclosures under Rule 26(a)(3) are due.  Rule 26(a)(3) in turn provides for disclosures within 30 days prior to trial unless "the court orders otherwise."  Here the court did order otherwise when it set the November 14, 2014, deadline for Jefferson's expert disclosures.[15]  The scheduling of expert disclosures by the court is a common practice and one specifically sanctioned by Rule 26(a)(2)(D).

Jefferson's reliance on *Talbert* is also unavailing.  There, the City of Chicago complained that Talbert's supplemental report which had to a large extent been produced at the City's own request should be excluded.  In contrast to the situation here, in *Talbert* the supplemental report was not untimely.  To the contrary, the parties in *Talbert* agreed that there would be a supplemental report with the expert's deposition to follow the supplemental report.[16]  Indeed, in *Talbert* the judge made a point of distinguishing a decision by the relevant circuit court in *Salgado v. General Motors*

---

[13]Doc. 137 at 9.

[14]236 F.R.D. 415 (N.D. Ill. 2006) (mis-named by Jefferson as "*Talbot v. City of Chicago*").

[15]Order at doc. 57.

[16]236 F.R.D. at 417-18.

*Corp.,*[17] pointing out that in *Salgado*, the party offering the expert report had not complied with the court ordered deadline for submitting expert reports.  "There is nothing novel about *Salfado's* holding.  It is simply an application of the federal court's consistent recognition of the importance of adherence to discovery deadlines and of the broad authority district courts have to deal with deviations from those deadlines."[18]

Rule 37(c)(1) and Ninth Circuit case law[19] recognize that untimely disclosed expert testimony should not be excluded where the failure to timely disclose "was substantially justified or is harmless."[20]  Bank and Kritza's initial motion papers persuasively argue that the untimely disclosure of the Second Report and supplementary materials was not substantially justified.  Jefferson's response does not include meaningful argument that the late disclosure was substantially justified.

Jefferson does argue that the delay in disclosing the Second Report and supplementary materials was harmless.  He urges that this is so because defendants had an opportunity to and did depose Flynn after the Second Report and supplementary materials were disclosed.  Jefferson cites *Cloud v. Pfizer, Inc.*[21] in support of his argument.  The pertinent issue in *Cloud* was whether to strike an affidavit by plaintiff's expert filed to support plaintiff's opposition to Pfizer's motion to exclude the expert's testimony.  The court denied the motion to strike for two reasons, the first being

---

[17]150 F.3d 735 (7th Cir. 1998).

[18]236 F.R.D at 422-23.

[19]*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001).

[20]Fed. R. Civ. P. 37(c)(1).

[21]198 F. Supp.2d 118, 1128 (D. Ariz. 2001).

that the court had already ruled that the affidavit was timely filed, and the second being that the affidavit was harmless in light of what Pfizer knew from the expert's original report and deposition testimony. *Cloud* did not involve an effort to have a second or supplemental expert report considered. It dealt only with the viability of the first and only expert report, and so offers little support for Jefferson's position.

Jefferson also relies on *Jackson v. Allstate Ins. Co.*[22] That case supports his contention that the delay in disclosure was harmless. In *Jackson* the relevant evidence included evidence about the location of certain individuals around the time of a fire which burned Jackson's home. Allstate retained an expert witness named Levy with expertise in locating people via cell phone tracking. The appellate court framed the issue as follows:

> Jackson next asserts the district court erred by denying her motion to exclude Levy's expert testimony because of a late disclosed supplement expert report. The record indicates that on December 2, 2013, Jackson took an extensive deposition of Levy . . . . On the morning of the deposition Levy conducted a field study of the cell towers located near Jackson's house. During the deposition Levy disclosed to Jackson's counsel that he had conducted the field study, discussed the methodologies he utilized, and fully explained the results of the study. Approximately two weeks later, Levy provided Jackson with a supplemental report that summarized the same information Levy disclosed during his deposition.[23]

The *Jackson* court recognized that under Rule 37(c)(1) the supplemental report and associated testimony was subject to exclusion, but nonetheless affirmed the trial court's decision to permit use of Levy's testimony. The appellate court found the late

---

[22]785 F.3d 1193 (8th Cir. 2015).

[23]*Id.* at 1203-04.

disclosure to be harmless because Jackson had deposed Levy on the topic of the field study, had not sought a supplemental deposition, and failed to identify any information in the report that took Jackson by surprise.

The next case Jackson cites to show the delay is harmless is *Smith v. Tenet Healthsystem SL, Inc.*[24]  There, plaintiff Smith objected to an expert's reliance on x-rays during his trial testimony.  The x-rays had not been disclosed in the expert's report, but were discussed during his deposition.  Given that the x-rays were covered in the deposition, the court held the omission form the report was harmless.[25]  This case also supports Jackson's argument.

The last case cited by Jackson on this issue is *Commonwealth Ins. Co. v. Titan Tire Corp.*[26]  There, defendant Titan complained about plaintiff's failure to disclose the expert opinion of one Robert Ochs.  However, as the appellate court explained, Ochs was the plaintiff's expert in the underlying lawsuit and Titan had participated in Ochs' deposition in that case and so he knew the substance of his testimony.  The court also pointed out that Titan knew plaintiff would rely on Ochs expert testimony by virtue of plaintiff's interrogatory answers.  The facts in *Titan* are so different from the situation at bar that the case has no bearing on the motion at hand.

Reduced to its essence, Jefferson's argument is that the deposition provided an adequate cure for the failure to timely present the Second Report and associated

---

[24]436 F.3d 879 (8th Cir. 2006).

[25]*Id.* at 889.

[26]398 F.3d 879 (7th Cir. 2004).

supporting materials.  In its memorandum at docket 110, Bank contends that the late disclosure was not harmless because its "expert rebuttal deadline has passed and discovery is now closed."[27]  Bank did not file a reply memo (although it did join in Kritza's reply).  Kritza correctly notes in his opening memorandum that the burden is on Jefferson to show that the late disclosure was not harmless, citing ninth Circuit case law on point.[28]  However, Kritza did not specifically address how the late disclosure harmed Kritza.  Kritza's reply memo addresses the topic of harm as follows:

> While being able to depose Flynn helps, it is not a complete cure to the prejudice resulting from the untimely disclosure.  The biggest problem is that Kritza has no way to rebut the Second Report under the Court's scheduling order.[29]

Kritza also makes the point that "the disruption of the scheduling order can hardly be considered harmless."[30]  Kritza goes on to note that disrupting the schedule will ultimately effect how soon trial may be had and the case resolved.

The court finds that Jefferson's late disclosure of the Second Report and supplementary documents was not substantially justified.  The court also finds that the extensive deposition of Flynn taken after disclosure of the late materials obviates most of the harm to Bank and Kritza.  The most significant harm which the deposition does not eliminate is the opportunity Bank and Kritza should have to secure their own expert witnesses whose testimony might rebut that of Flynn.

---

[27]Doc. 110 at 7.

[28]Doc. 108 at 8 (citing *Yeti by Molly*, 259 F.3d at 1107).

[29]Doc. 145 at 6.

[30]*Id*.

As noted above, Rule 37(c)(1), on which Bank and Kritza primarily rely, authorizes the court to exercise its discretion to impose sanctions other than exclusion of evidence.  In the exercise of its discretion here, the court is mindful of the fact that establishing the existence of forgeries is central to Jefferson's position, and Flynn's opinions would support Jefferson's own testimony that the signatures he disputes are not his own.  Under these circumstances and although the court is not sanguine about re-opening the pre-trial schedule for the limited purpose of allowing Bank and Kritza to retain their own (or perhaps a single joint) expert witness to rebut Flynn, that resolution would eliminate all of the harm from the late disclosures save disruption to the pre-trial schedule.  In order to assure that the parties' claims and defenses are decided on the merits, the court will extend the pre-trial schedule as follows: Bank and Kritza shall have the opportunity to jointly retain a witness (or if they prefer each to retain a witness) to rebut Flynn's report.  A rebuttal witness report or reports shall be provided to Jefferson within 42 days from the date of this order.  The rebuttal witness or witnesses shall be deposed within 56 days from the date of this order.  Questioning by Jefferson's counsel shall be limited to 2 hours for each (or the single joint) rebuttal witness.

As an appropriate sanction under Rule 37(c)(1) in lieu of excluding Flynn's testimony, Jefferson shall pay the reasonable attorney fees incurred by Bank and Kritza in connection with their motions at docket 108 and 110.  The court encourages counsel to confer and stipulate to the amount of such fees.  If counsel cannot agree, then Bank and Kritza may each file a properly supported motion for fees within 21 days from the date of this order; Jefferson shall respond within 7 days from the filing of each such motion; and Bank and Kritza may reply within 7 days from the filing of Jefferson's

response to its motion.  If a motion for attorney fees is made, it may include the attorney

fees associated with preparing the motion for fees itself, as well as the attorney fees

associated with either the motion at docket 108 or the motion at docket 110.  If a reply

is filed, the attorney fees associated with the reply may <u>not</u> be included in the total

sought.  Jefferson may contest the quantum of, but not the right to recover, attorney

fees in his response.

### IV.  CONCLUSION

For the above reasons, the motions at dockets 108 and 110 are **DENIED,** and

**IT IS FURTHER ORDERED**:

(1) Jefferson shall pay Bank and Kritza their reasonable attorney fees
incurred in connection with the motions at dockets 108 and 110, and if the
parties cannot agree on the appropriate amount of fees and so advise the
court in a stipulation, Bank and Kritza shall file a motion for attorney fees
within 21 days from the date of this order, Jefferson shall respond within 7
days from the filing of each motion, and Bank and Kritza may reply within
7 days from the filing of the response to its motion;

(2) Bank and Kritza may each retain expert witnesses, or preferably will
jointly retain a single expert witness, to rebut the testimony of William
Flynn and such expert's or experts' report(s) shall be provided to Jefferson
within 42 days from the date of this order.

(3) The expert or experts retained by Bank and Kritza may be deposed by
Jefferson within 56 days from the date of this order.  Jefferson's
examination at deposition shall be limited to 2 hours for each expert or the
single joint expert.

DATED this 6th day of August 2015.


_____
                /S/
         JOHN W. SEDWICK
   UNITED STATES DISTRICT JUDGE


-15-