# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Western Alliance Bank,<br>    Plaintiff,<br>    vs.<br>Richard Jefferson,<br>    Defendant. | 2:14-cv-0761 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at docket 248] |
| Richard Jefferson,<br>    Counter-claimant,<br>    vs.<br>Western Alliance Bank,<br>    Counter-defendant. | |
| Richard Jefferson,<br>    Third-party plaintiff,<br>    vs.<br>Theodore Kritza & Michelle Lee Kritza,<br>    Third-party defendants. | |

## I.  MOTION PRESENTED

The court entered judgment in favor of plaintiff and counter-defendant Western Alliance Bank ("Alliance") at docket 246.  At docket 248 Alliance applies for attorney's fees and non-taxable costs.  Defendant and counter-claimant Richard Jefferson ("Jefferson") opposes at docket 262; Alliance replies at docket 272.

Oral argument was requested, but would not assist the court.

## II.  DISCUSSION

**A.    Attorney's Fees**

    **1.    Alliance's entitlement to attorney's fees**

After considering, but not explicitly addressing, the multi-factor standard outlined in *Associated Indemnity Corporation v. Warner*,[1] this court ruled that Alliance is entitled to an award of reasonable attorney's fees pursuant to A.R.S. § 12-341.01.[2]  Jefferson now brings two challenges to the court's ruling based on one of the *Associated Indemnity* factors: whether "[t]he litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result."[3]

Jefferson first argues that "a substantial portion of the attorney['s] fees sought" could have been avoided had Alliance moved for summary judgment "at a much earlier point in the case."[4]  This argument rings hollow in light of the court's findings that Jefferson's litigation strategy was to delay for as long as possible the repayment of a debt he knowingly ratified.  It was this litigation strategy, not Alliance's reasonable efforts to obtain discovery and build its case, that prolonged resolution.

Second, Jefferson notes that Alliance's billing records show that in February 2015 third-party defendant Ted Kritza ("Kritza") withdrew his offer to settle Alliance's

---

[1]694 P.2d 1181 (Ariz.1985).

[2]Doc. 246.

[3]*Associated Indemnity*, 694 P.2d at 1184.

[4]Doc. 262 at 10.

action against Jefferson for $535,000.  Jefferson argues that "a substantial portion" of the attorney's fees generated in this case could have been avoided if Alliance had accepted that offer.[5]  In response, Alliance states that this offer was not "serious" because "Kritza had no financial ability to pay a more than $500,000 settlement offer to Alliance and it was quickly withdrawn by Kritza."[6]  Under the circumstances, Alliance's decision not to accept Kritza's settlement offer was reasonable.

### 2. Reasonableness of the requested attorney's fees

When analyzing attorney's fees for reasonableness, the court must determine that: (1) the hourly billing rate is reasonable and (2) the hours expended on the case are reasonable.[7]  Local Rule 54.2(c)(3) lists thirteen factors that courts should consider when determining the reasonableness of an attorney's fee request.  They are:

> (A) The time and labor required by counsel;
> (B) The novel and difficulty of the questions presented;
> (C) The skill requisite to perform the legal service properly;
> (D) The preclusion of other employment by counsel because of the acceptance of the action;
> (E) The customary fee charged in matters of the type involved;
> (F) Whether the fee contracted between the attorney and the client is fixed or contingent;
> (G) Any time limitations imposed by the client or the circumstances;
> (H) The amount of money, or the value of the rights, involved, and the results obtained;
> (I) The experience, ability and reputation of counsel;
> (J) The "undesirability" of the case;
> (K) The nature and length of the professional relationship between the attorney and the client;
> (L) Awards in similar actions; and
> (M) Any other matters deemed appropriate under the circumstances.[8]

---

[5]*Id.* at 11 (citing doc. 248-1 at 34).

[6]Doc. 272 at 5.

[7]*Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931-21 (Ariz. Ct. App. 1983).

[8]LRCiv 54.2(c)(3).

"Once a party submits an itemized list of fees with sufficient detail and establishes entitlement to fees, the burden then shifts to the party challenging the fees to show that the fees are unreasonable."[9]

Alliance has submitted an itemized list of fees that show its three shareholder attorneys and two paralegals billed 819.9 hours on this case, for a total attorney's fee amount of $299,996.79.[10] The burden now shifts to Jefferson to show that these fees are unreasonable.

Jefferson does not dispute that Alliance's billing rates are reasonable.[11] Instead, he identifies 111.8 hours and $45,381.65 in Alliance's attorney's fees that he argues are unreasonable.[12] These arguments fall under the following four categories: (1) fees that were not incurred in this matter because they relate to a separate criminal investigation; (2) fees that were not necessarily incurred because of Rule 56(a); (3) fees that were not necessarily incurred because "the Power of Attorney was forged and not notarized in violation of Arizona law;" and (4) fees that have already been paid to Alliance pursuant to a court order.

### a. Criminal investigation

Jefferson argues that Alliance's attorney's fees "incurred in connection with interviews of Alliance employees conducted by the FBI" are not related to this case, but instead an independent criminal investigation, and therefore should not be included in

---

[9] *Essex Ins. Co. v. W.G.S., LLC*, No. CV 08-1402-PHX-JAT, 2010 WL 3239393, at *6 (D. Ariz. Aug. 16, 2010) (citing *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1286 (Ariz. Ct. App. 2007)).

[10] Doc. 248-1 at 13-60.

[11] Shareholder John R. Clemency's billing rate is listed as $494 per hour before 2015 and $535.50 per hour thereafter. Shareholder Lindsi Weber's billing rate is listed as $325 before 2015 and $346.50 per hour thereafter. Shareholder Janel Glynn's billing rate is listed as $295 before 2015 and $346.50 per hour thereafter. Paralegals Felice Wortman and Rachel H. Milazzo's billing rates "ranged from $200 to $234" per hour, with "the majority of the hours billed at $234 per hour." *Id.* at 4 ¶¶ 8-11.

[12] Doc. 262-1 at 2-9.

Alliance's attorney's fee award.[13] Alliance responds by arguing that the FBI investigation is related to this case because it was "initiated at the urging of Jefferson who only used the FBI as a litigation tactic in this case."[14] The court agrees with Jefferson that the time Alliance spent on the FBI investigation was spent on a related, but separate matter. Even if Jefferson contacted the FBI and asked them to investigate Kritza's transactions, the FBI exercised its discretion by choosing to investigate. Alliance's fees that relate to the FBI's investigation are not recoverable in this case. The nineteen entries identified by Jefferson will be removed, for a total reduction of $6,317.55.

### b. Fees not necessarily incurred because of Rule 56(a)

Jefferson repeatedly objects to Alliance's time entries as follows: "Objection as not necessarily incurred. See Rule FRCP 56A."[15] Jefferson does not explain the meaning of these objections; they are overruled.

### c. Fees not necessarily incurred because the Power of Attorney is illegitimate

Jefferson also repeatedly objects to Alliance's time entries as follows: "Objection as these fees were not necessarily incurred in this matter, as the Power of Attorney was forged and not notarized in violation of Arizona law."[16] Jefferson does not explain the meaning of these objections; they are overruled.

### d. Fees that have already been paid

Finally, Jefferson argues that he has already paid various fees pursuant to this court's order.[17] Alliance effectively concedes that Jefferson is correct by not responding

---

[13] Doc. 262 at 11.

[14] Doc. 272 at 7.

[15] See, e.g., Doc. 262-1 at 2.

[16] See, e.g., id. at 3.

[17] Id. at 9.

to this argument. The nine entries identified by Jefferson will be removed, for a total reduction of $1,688.40.

**B.     Non-taxable Costs**

   **1.     Alliance's entitlement to non-taxable costs**

Alliance seeks an award of all non-taxable costs related to this case. It first relies on A.R.S. § 12-341.01, but this reliance is misplaced because that statute pertains only to attorney's fees. Next, Alliance argues that it is owed non-taxable costs under the parties' contract. With regard to litigation costs, the loan agreements that Jefferson ratified state as follows: "Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses . . . ."[18]

Jefferson objects that his signature on these documents was forged.[19] In light of this court's ruling that he ratified them even if they were forged, this objection is overruled. Jefferson also objects that the contract limits recoverable costs to those allowed under applicable law. Because A.R.S. §§ 12-332 and 12-341 do not provide for recovery of non-taxable costs, Jefferson argues, they are prohibited by the contract. This argument lacks merit. The relevant statute, A.R.S. § 12-332, specifically provides that it does not prevent one party from contractually agreeing to reimburse another party's non-taxable costs.[20]

   **2.     Alliance's non-taxable costs**

The Local Rules require Alliance to "identify each related non-taxable expense with particularity" and "attach copies of applicable invoices, receipts and/or

---

[18] Doc. 1-4 at 78.

[19] Doc. 262 at 14.

[20] ARS § 12-332(A)(6) (Stating that recoverable costs include "[o]ther disbursements that are made or incurred pursuant to an order or agreement of the parties."); *Schritter v. State Farm Mut. Auto. Ins. Co.*, 36 P.3d 739, 742 n.5 (Ariz. 2001).

disbursement instruments."[21]  "Failure to itemize and verify costs may result in their disallowance by the court."[22]

Although Alliance submitted an itemized list of its non-taxable costs, totaling $4,622.69,[23] it did not include any invoices, receipts, or disbursement instruments.  This deficiency is fatal to Alliance's request.[24]

**C.   Total Award Calculation**

*Attorney's Fees*: $299,996.79 **-** $6,317.55 **-** $1,688.40 **=** $291,990.84.

*Non-taxable Expenses*: $0.

*Total:* $291,990.84.

### III.  CONCLUSION

Based on the preceding discussion, Alliance's application for attorney's fees and non-taxable expenses at docket 248 is **GRANTED IN PART AND DENIED IN PART**.  Alliance is awarded a total of $291,990.84 in attorney's fees, costs, and expenses as set out above.

DATED this 8th day of April 2016.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[21] LRCiv 54.2(e)(3).

[22] *Id.*

[23] Doc. 248-1 at 60-64.

[24] *See Med. Protective Co. v. Pang*, 25 F. Supp. 3d 1232, 1249 (D. Ariz. 2014) ("Pang has failed to attach copies of applicable invoices, receipts, and/or disbursement instruments.  Without such documentation, the Court cannot verify these expenses. Accordingly, the Court does not find the $4,701.23 in related non-taxable expenses reasonable, and will not award these expenses.").