1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                         **DISTRICT OF ARIZONA**

10

11  **Western Alliance Bank,**                    )

12                    **Plaintiff,**              )        **2:14-cv-0761 JWS**

13        **vs.**                                  )        **ORDER AND OPINION**

14  **Richard Jefferson,**                         )        **[Re:   Motions at dockets 267, 269,**

15                    **Defendant.**              )             **and 270]**

16  ———————————————————                            )

17  **Richard Jefferson,**                         )

18                    **Counter-claimant,**        )

19        **vs.**                                  )

20  **Western Alliance Bank,**                     )

21                    **Counter-defendant.**       )

22  ———————————————————                            )

23  **Richard Jefferson,**                         )

24                    **Third-party plaintiff,**   )

25        **vs.**                                  )

26  **Theodore Kritza & Michelle Lee**             )
    **Kritza,**                                    )

27                    **Third-party defendants.**  )

28

## I.  MOTIONS PRESENTED

Before the court are three motions *in limine* filed by third-party defendants Theodore Kritza and Michelle Lee Kritza (collectively, "Kritza") at dockets 267, 269, and 270.  Third-party plaintiff Richard Jefferson ("Jefferson") opposes these motions at dockets 277, 278, and 279, respectively.  Oral argument was not requested and would not assist the court.

## II.  STANDARD OF REVIEW

The district courts exercise broad discretion when ruling on motions *in limine*.[1]  In order for evidence to be excluded under such motions, it must be "clearly inadmissible on all potential grounds."[2]  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[3]

"It is settled law that in limine rulings are provisional.  Such 'rulings are not binding on the trial judge [who] may always change his mind during the course of a trial.'"[4]  "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."[5]

---

[1] *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002) ("[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in limine.").

[2] *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D.Ohio 2004).

[3] *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D.Ill.1993).

[4] *United States v. Benedetti*, 433 F.3d 111, 117 (1st Cir. 2005) (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000)).

[5] *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

### III.  DISCUSSION

**A.    Kritza's Motion to Exclude Evidence and Argument Regarding the FBI's Investigation**

In or around October 2013 Jefferson asked the FBI to investigate Kritza "to make right what was wrong."[6]  As part of the FBI's investigation, Special Agent Kyle Armstrong ("Armstrong") arranged for the recording of a phone conversation between Jefferson and Kritza.[7]  Jefferson claims that during this conversation Kritza admitted to using the line of credit ("LOC") at the heart of this case without Jefferson's knowledge or permission;[8] Kritza denies this.[9]

In March of last year Jefferson requested a stay of proceedings in this case because Jefferson was told that he would not be able to obtain the FBI's recording of his phone call with Kritza while the FBI's investigation is ongoing.[10]  The court denied Jefferson's motion, and to date Jefferson has not been able to obtain the recording.

Jefferson has named Armstrong as a witness whom he may call at trial[11] to testify about the "criminal investigation involving Theodore Kritza," including "interviews and recorded statements [from] Kritza."[12]  Kritza now moves pursuant to Federal Rules of Evidence 402 and 403 to exclude "any evidence or argument at trial regarding the fact that an investigation has been done or is ongoing," including "any reference to the

---

[6]Doc. 267-1 at 9; Doc. 76 at 8.

[7]Doc. 267-2 at 25.

[8]Doc. 267-1 at 6.

[9]*Id.* at 17.

[10]Doc. 76.  *See also* Doc. 267-2 at 21 (The FBI stating that "we will not be turning over documents until the conclusion of our criminal investigation."); *id.* at 20 ("[T]he FBI is not in the position to turn over any documents related to our ongoing criminal investigation until the conclusion of the investigation.").

[11]Doc. 74 at 3.

[12]Doc. 267-1 at 47.

fact that the FBI may have recorded a telephone conversation between Jefferson and Kritza."[13]

### 1.    Federal Rule of Evidence 402

Pursuant to Federal Rule of Evidence 402, relevant evidence is generally admissible and irrelevant evidence is inadmissible.  Evidence is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence;" and (2) "the fact is of consequence in determining the action."[14]  Kritza argues that the FBI's investigation is irrelevant because the fact that "the FBI is trying to find out whether Kritza misappropriated" Jefferson's funds does not make it more or less probable that Kritza has done so.[15]  Jefferson does not dispute that the investigation itself is irrelevant; he instead argues that the FBI's recording of his telephone call with Kritza is relevant evidence.[16]

Both parties' arguments are well taken.  The pertinent "fact of consequence" here is whether Kritza misappropriated funds from the LOC.  If Kritza admitted to doing so, that fact would obviously be relevant and Jefferson's evidence of that admission, in the form of testimony from a witness to that conversation or a recording of the conversation itself, would be admissible under Rule 402.  Whether the FBI was involved in gathering that evidence, however, has no bearing on whether Kritza misappropriated LOC funds.  Jefferson essentially concedes as much in his opposition.[17]  The court concludes that the mere fact that the FBI investigated Kritza is irrelevant.

---

[13]Doc. 267 at 9.

[14]Fed. R. Evid. 401.

[15]Doc. 267 at 7 (emphasis removed).

[16]Doc. 277 at 4.

[17]*Id.* at 6 ("It is not so much that the FBI recorded the conversation, it's that the recorded admissions exist and makes clear the fact that Kritza did in fact steal LOC-funds from Jefferson.").

### 2.   Federal Rule of Evidence 403

Kritza also argues that references to the FBI investigation should be barred under Rule 403, which provides in pertinent part that relevant evidence may be excluded where its "probative value is substantially outweighed by a danger of . . . unfair prejudice."  The court agrees.

Evidence that the FBI has investigated Kritza invokes the "prestige and authority of the FBI and the United States Department of Justice,"[18] and could likely lead a jury to unfairly conclude that the investigation itself conclusively establishes that Kritza has committed a crime.  Thus, Jefferson is free to characterize himself as a victim of crimes committed by Kritza, as he has done many times in the briefs he has submitted to this court, but because the FBI has never publicly connected Kritza to any crimes it would be unfairly prejudicial to allow him to assert that the FBI is actively investigating or considering whether to prosecute Kritza.  Further, at trial Jefferson will not be allowed to reference the "criminal case," "criminal prosecution," or "criminal proceedings" against Kritza, or refer to Kritza as a "criminal defendant," unless Kritza is formally charged with a crime.[19]

Jefferson states that he may call Armstrong to testify about the content of the recorded conversation between Krtiza and Jefferson.[20]  Based on the current record, the court is unable to discern why Armstrong would be able to testify about the content of a recording that is part of an active investigation, but not able to produce the recording itself in response to a subpoena.  Jefferson will have to adequately resolve this seeming contradiction before any testimony regarding the content of the recorded

---

[18]*Ginena v. Alaska Airlines, Inc.*, No. 2:04-CV-01304-MMD, 2013 WL 211071, at *6 (D. Nev. Jan. 17, 2013).

[19]*See Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008).

[20]Doc. 277 at 6.

1  conversation will be allowed.[21]  If Jefferson can adequately establish that the recording

2  is unavailable but Armstrong may nonetheless testify as to its contents, Jefferson will be

3  allowed to reference the FBI's investigation only to the extent necessary to lay a

4  foundation for Anderson's testimony.  Finally, Kritza's hearsay objection to this

5  testimony is overruled because an opposing party's statement offered against that party

6  is not hearsay.[22]

7  **B.   Kritza's Motion to Exclude Evidence of Forged Documents**

8        In separate opinions the court has ruled that Jefferson's third-party complaint

9  alleges only that Kritza forged the documents attached as Exhibits A-K of Western

10 Alliance Bank's complaint ("the LOC documents")[23] and, in any event, Kritza is not liable

11 for those alleged forgeries because Jefferson ratified his signature on those

12 documents.[24]  Kritza argues that, as a result of these rulings, any evidence that shows

13 the LOC documents or any other documents were forged is irrelevant.

14       Jefferson disagrees, arguing that certain forged documents are relevant because

15 they show "the means by which Kritza accessed the Alliance LOC."[25]  Jefferson also

16 argues that all evidence of forged documents is admissible under Rule 404(b) because

17 they show Kritza's "modus operandi in carrying out his general scheme to

18 misappropriate the Alliance LOC . . . through the use of forged documents."[26]

19

20       [21]*See United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) ("Proffering testimony
21 about Bennett's border-crossing instead of introducing the GPS data, therefore, was analogous
   to proffering testimony describing security camera footage of an event to prove the facts of the
22 event instead of introducing the footage itself.  This is precisely the kind of situation in which the
   best evidence rule applies.").
23

24       [22]Fed. R. Evid. 801(d)(2).

25       [23]Doc. 183 at 18-19.

26       [24]Doc. 235 at 23.

27       [25]Doc. 278 at 6.

28       [26]*Id.* at 10.

**1.    Documents Kritza used to gain access to the LOC may be relevant**

Jefferson specifically identifies the 2003 Power of Attorney form,[27] the Consumer Revolving Line of Credit Authorized Signer Information form,[28] and the annual Disbursement Request and Authorization forms[29] as three types of forged documents that allowed Kritza to misappropriate the LOC funds (collectively, "the Access Documents").  If these documents were forged, Jefferson argues, it would be "more probable that Kritza accessed and used the Alliance LOC without Jefferson's authority."[30]   Jefferson's handwriting expert, William Flynn ("Flynn"), concludes "to a high degree of probability" that Jefferson's signature was forged on the Access Documents.[31]

Kritza argues that the Access Documents are irrelevant because his sole defense is that his use of the LOC was authorized under the 2008 promissory note that evidences Jefferson's $2 million loan to Stratosphere Management, LLC.  If the note is valid, then Kritza's use of the LOC was authorized regardless whether the Access Documents were forged, he argues.[32]

"[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue."[33]  As such, relevancy rulings are fact based and depend on many factors, including the relationship between the evidence and the parties' theories

---

[27]Flynn identifies this document as Q-1.  Doc. 108-1 at 41.  *See also* Doc. 134-2 at 20-28.

[28]Flynn identifies this document as Q-4.  Doc. 108-1 at 42.  *See also* Doc. 134-2 at 66.

[29]Flynn identifies these documents as Q-6 (2004); Q-10 (2005); Q-13 (2006); Q-17 (2007); Q-21 (2008); Q-24 (2009); Q-29 (2010); Q-32 (2011); Q-35 (2012); and Q-36 (2013).  Doc. 108-1 at 41-45.  *See, e.g.,* Doc. 134-2 at 65.

[30]Doc. 278 at 6.

[31]*Id.* at 49.

[32]Doc. 269 at 5.

[33]*Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

of the case.[34]  Simply put, "we cannot say whether the evidentiary arrow is properly aimed until we see the target."[35]

Under both parties' theories of the case, the sole question upon which liability depends is whether Jefferson authorized Kritza to use the Alliance LOC funds in the manner in which he used them.[36]  Although Kritza argues that the validity of the 2008 note is the only "fact of consequence" relevant to that question, the court disagrees. That note, if found to be valid, would show that Jefferson agreed to loan Stratosphere Management as much as $2 million.  But the note is silent regarding the source of the loan proceeds.[37]  Thus, even if Kritza persuades the jury that Jefferson loaned Stratosphere $2 million, he must also prove that the parties intended for Kritza to use the Alliance LOC as a funding source for that loan and that Kritza's actual use of the LOC funds complied with the party's agreement (for example, that he did not take more than $2 million).  Under this scenario, Jefferson's evidence that has a tendency to show that the Access Documents were forged would be relevant because, if the jury finds that evidence credible, it would be less likely that Jefferson authorized Kritza to fund the loan with draws against the LOC.  Kritza's motion will be denied as to the Access Documents.

### 2.    Evidence of other allegedly forged documents

Rule 404 prohibits the use of evidence of a prior act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[38]  Applying this rule to the facts of this case, Jefferson cannot submit evidence showing that Kritza has used forged documents in the past to prove

---

[34]*See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).

[35]22 Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5164 (2d ed.).

[36]Doc. 33 at 6 ¶ 26, 7 ¶ 35; 8 ¶ 47; 9 ¶¶ 50-52, 55.

[37]Doc. 159-1 at 44-48.

[38]Fed. R. Evid. 404(b)(1).

that he has bad character and therefore he must have used forged documents to gain access to Jefferson's LOC.  Jefferson may introduce evidence of a prior bad act for other purposes, however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[39]  Jefferson argues that evidence showing that Kritza has used forged documents in the past is admissible under Rule 404(b), not to prove that he has a propensity for using forgeries, but to show that his "modus operandi in carrying out his general scheme to misappropriate the Alliance LOC was through the use of forged documents."[40]  Jefferson is mashing together two separate permissible uses of prior bad act evidence: modus operandi (which goes to "identity")[41] and scheme (which goes to "plan").[42]

Jefferson's reliance on modus operandi is misplaced.  Modus operandi refers to "evidence of other criminal acts committed by the defendant 'so nearly identical in method as to earmark them as the handiwork of the accused.'"[43]  "Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes.  The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature."[44]  Jefferson's modus operandi argument fails because he does not contend that "the use of forged documents" is so distinctive to Kritza that it is like a signature by which he can be identified.

---

[39]Fed. R. Evid. 404(b)(2).

[40]Doc. 278 at 10.

[41]*See* 22B Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5246 (1st ed.).

[42]*Id.* § 5244.

[43]*United States v. Webb*, 115 F.3d 711, 719 n.7 (9th Cir. 1997) (quoting 1 *McCormick on Evidence* § 190, at 801 & n.19 (John W. Strong ed., 4th ed.1992)).

[44]1 *McCormick on Evidence* § 190, at 801-03 (footnotes omitted).

1   Jefferson's argument that he is offering the prior forgeries to show a plan also
2   misses the mark.  Evidence that someone has committed the same bad act over and
3   over again does not show a "plan" as that word is defined in Rule 404(b)(2)—that is
4   propensity evidence that is prohibited by Rule 404(b)(1).  "To be properly admissible
5   under Rule 404(b) it is not enough to show that each crime was 'planned' in the same
6   way; rather, there must be some overall scheme of which each of the crimes is but a
7   part."[45]  Jefferson does not explain how Kritza's past use of these other allegedly forged
8   documents fits into some overall scheme to misappropriate the LOC funds.  As a result,
9   Jefferson has not shown that these other documents tend to prove a material point.[46]
10  Kritza's motion to exclude this evidence will be granted.

11  **C.   Kritza's Motion to Exclude Evidence and Argument Related to Damages**
        **that Jefferson did not Plead, Failed to Adequately Disclose, and Cannot**
12      **Support with Expert Evidence**

13        **1.     Procedural history**

14        This is the second time that this court has been asked to decide whether
15  Jefferson's damages disclosures comply with Rule 26(a)(1).  At docket 183 the court
16  ruled that Jefferson's second supplemental damages disclosure was noncompliant with
17  Rule 26 and ordered him to supplement it again to bring it into conformance with that
18  rule.  Jefferson supplemented his damages disclosure on August 14, 2015.[47]  His
19  August 14 damages calculation does not include any damages related to direct
20  transfers from the LOC, but does include $9,770,500 in damages from unauthorized
21  transfers that "relate to" the LOC from four of Jefferson's personal bank accounts
22  ("Account No. 0230," "Account No. 4655," "Account No. 2972," and "Account No.
23  0220").[48]  To decipher how he calculated this amount, Jefferson references the

24  _____

25  [45]22B Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5244 (1st ed.).

26  [46]*United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012).

27  [47]Doc. 210-1 at 2-6.

28  [48]Doc. 270-1 at 3-4.

-10-

1  "schedules" he attached to the disclosure statement.[49]  These schedules consist of

2  eight pages of illegible material.[50]  Jefferson's damages also include unspecified

3  principal and interest payments on the LOC.[51]

4      At docket 217 Magistrate Judge Bridget S. Bade granted in part and denied in

5  part four motions to compel that were referred to her.  In pertinent part, she granted

6  Jefferson's motion to compel Kritza to either confirm that he has produced all records

7  that show all amounts that the Stratosphere entities received from the LOC or "obtain

8  the documents and produce them."[52]  She also granted Kritza's motion to compel

9  Jefferson to answer non-uniform interrogatories three, six, and seven, which pertain to

10  Jefferson's damages.[53]  Judge Bade noted that "Jefferson agreed to provide better

11  copies of spreadsheets that were attached to his supplemental disclosure, which may

12  include providing the spreadsheets electronically and in their native format.  Jefferson

13  also agreed to provide a summary of the information contained in the spreadsheets,

14  including a 'bottom line' damages number."[54]

15      At docket 235 the court ruled that Jefferson's complaint alleges only that Kritza

16  misappropriated the LOC funds ("Loan 4825," "Loan 5289," and "Loan 9169") and not

17  any funds from Jefferson's personal bank accounts.[55]  The court's order also winnowed

18  Jefferson's third-party claims against Kritza to the following five: (1) breach of fiduciary

19

20  [49]*Id.* at 3-4.

21  [50]*Id.* at 7-17.

22  [51]*Id.* at 4.

23  [52]Doc. 217 at 7.

24  [53]*Id.* at 3.

25  [54]*Id.*

26  [55]Doc. 235 at 31.  *See also* Jefferson's August 14 supplemental disclosure statement.
27  Doc. 210-1 at 2-19.  Jefferson computed his compensatory damages to be $9,770,500.  This
number includes only unauthorized transfers and payments from Jefferson's personal bank
28  accounts, not the LOC.

duty;[56] (2) breach of contract;[57] (3) unjust enrichment;[58] (4) accounting;[59] and (5) conversion.[60]

Jefferson states that Kritza provided him with financial documents from the Stratosphere entities on November 16, 2015.[61]  On January 11, 2016, Jefferson served Kritza with another Rule 26(a) damages disclosure.[62]  In it, Jefferson contends that Kritza has misappropriated $117,000 directly from the LOC,[63] misappropriated nearly $10 million more in transfers that were "related to" the LOC from Jefferson's four bank accounts,[64] and nearly $2 million in principal and interest payments on the LOC.[65]

### 2.    Whether Jefferson is seeking damages for claims not alleged in his complaint

Kritza argues that Jefferson's January 11 damages disclosure seeks damages for funds taken from his personal bank accounts, as opposed to the LOC, and therefore seeks an order precluding Jefferson from seeking or mentioning such damages at trial.[66]  According to Jefferson, these damages are part of this case because Kritza

---

[56]Doc. 33 at 6 ¶ 26.

[57]*Id.* at 7 ¶ 35.

[58]*Id.* at 8 ¶ 47.

[59]*Id.* at 9 ¶¶ 50-52.

[60]*Id.* ¶ 55.

[61]Doc. 279 at 5.

[62]Doc. 270-3 at 2-6.

[63]*Id.* at 3 ($10,000 from Loan 4825 + $7,000 from Loan 4825 + $100,000 from Loan 5289 = $117,000).

[64]*Id.* at 3-5 ($4,424,000 from Account No. 0230 + $1,865,054.83 from Account No. 4655 + $2,580,250 from Account No. 2972 + $1,012,100 from Account No. 2220 = $9,881,404.83).

[65]*Id.* at 4-5 ($877,000 + $110,801.49 + $900,000 + 14,602.68 = $1,902,704.17).

[66]Doc. 270 at 6-7.

1   used Jefferson's personal bank accounts to transfer amounts "relating to" the LOC.[67]

2   He cites Alliance's responses to Kritza's first set of non-uniform interrogatories, which

3   show that numerous transfers were made from the LOC into Jefferson's personal

4   accounts.[68]  It is impossible for the court to verify whether the schedules that Jefferson

5   attached to his January 11 disclosures trace those transfers back to Kritza or

6   Stratosphere because they are illegible in print form.[69]  Jefferson admits that his

7   schedules are "of a poor reproduction quality," but asserts that Kritza has not been

8   prejudiced thereby because he sent them to Kritza in their native format.[70]

9       Based on the record before the court, the court is unable to determine whether

10  Jefferson is seeking damages for funds that Kritza misappropriated from Jefferson's

11  personal bank accounts (that are not at issue here), or whether Jefferson is seeking

12  damages for funds that Kritza transferred into Jefferson's personal accounts from the

13  LOC and then misappropriated (that are at issue).  The court will deny Kritza's motion,

14  but will also remind Jefferson that he may only recover damages for misappropriated

15  funds that are traceable to the LOC.

16      **3.    Whether Jefferson is seeking damages that he failed to timely
              disclose**

17      Kritza next argues that Jefferson's untimely Rule 26 disclosures should preclude

18  him from recovering (1) damages arising from funds that he allegedly stole from the

19  LOC directly; (2) damages to Jefferson's credit rating and reputation; and (3) special

20  damages.[71]

21

22

23  _____

24  [67]Doc. 279 at 8.

25  [68]Doc. 279-7 at 5-7.

26  [69]Doc. 270-3 at 8-17.

27  [70]Doc. 279 at 8.

28  [71]Doc. 270 at 9.

### a.   Funds that Kritza allegedly stole from the LOC directly

Jefferson's January 11 disclosures assert that Kritza misappropriated funds from the LOC directly on three occasions: (1) $10,000 from Loan 4825; (2) $7,000 from Loan 4825; and (3) $100,000 from Loan 5289.[72]  He states that the first amount was transferred to one of Kritza's clients and the other two were transferred to a Stratosphere Management bank account.  Kritza argues that these damages were not timely disclosed under Rule 26(a)(1).

Rule 26(a)(1)(A)(iii) generally requires each party to disclose within 14 days after the Rule 26(f) conference "a computation of each category of damages claimed by the disclosing party" and the documents on which each computation is based, "including materials bearing on the nature and extent of injuries suffered."  "A party must make its initial disclosures based on the information then reasonably available to it.  A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures."[73]  If the party later learns that his initial disclosures are incomplete or incorrect in some material respect, he has a duty to supplement or correct his disclosures "in a timely manner."[74]

Jefferson claims that he was not aware that his Rule 26 damages disclosures were incomplete until after he received financial documents from Kritza on November 16.  Upon reviewing those documents, he supplemented his disclosures to include the at issue claims on January 11, about two months later.  The court concludes that under the circumstances Jefferson's supplemental disclosures were timely.

---

[72]Doc. 270-3 at 3.  *See also* Doc. 279-7 at 6-7.

[73]Fed. R. Civ. P. 26(a)(1)(E).

[74]Fed. R. Civ. P. 26(e)(1).

**b.   Jefferson has abandoned his claims for damages to his credit rating, reputation, and other special damages**

"Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstances of the case."[75]  Commonly, special damages "are for items that are in addition to the general damages the law normally awards to compensate the plaintiff for the injury sought to be redressed."[76]

Kritza argues that Jefferson should be precluded from recovering special damages, including damages to his credit and reputation, because he has failed to disclose a computation of those damages.[77]  In response, Jefferson concedes that he has abandoned his claims for credit and reputation damages,[78] and does not dispute that he has abandoned his claims for any other special damages.  Kritza's motion to preclude evidence of special damages will be granted.

**4.   Not all of Jefferson's damages evidence is inadmissible**

The full procedural history of Jefferson's unsuccessful attempt to name James Tucciarone ("Tucciarone") as an expert in this case is chronicled in this court's order at docket 187.  Suffice it to say for present purposes, the court foreclosed Jefferson from using Tucciarone as an expert witness pursuant to Rule 37(c)(1) based on Jefferson's counsel's flagrant violations of the Federal Rules of Civil Procedure.  The court ruled that if Jefferson calls Tucciarone at trial, "any testimony which purports to summarize documents or events must be strictly limited to lay testimony and may <u>not</u> be used as a back door through which opinion testimony is elicited."[79]

---

[75]5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1310 (3d ed. 2008).

[76]*Id.*

[77]Doc. 270 at 9-10.

[78]Doc. 279 at 6-7.

[79]Doc. 187 at 3 (emphasis in original).

1    Kritza now argues that Jefferson's failure to successfully name an accounting

2    expert means that he "cannot introduce any of his alleged or pleaded damages at

3    trial."[80]  But Kritza has not established that proving all of Jefferson's damages requires

4    expert accounting opinion evidence; this argument goes too far.  Lay witnesses may

5    testify to matters about which they have firsthand knowledge.[81]  They may also offer

6    their opinion on a matter provided that the opinion is based on firsthand knowledge, is

7    helpful, and is not "based on scientific, technical, or other specialized knowledge within

8    the scope of Rule 702."[82]  But where an opinion requires such specialized knowledge,

9    the witness may not offer it unless she qualifies as an expert under Rule 702.

10    Jefferson's lay witnesses may offer testimony about their firsthand observations,

11    including opinion testimony not based on specialized knowledge.[83]  For example,

12    Jefferson may testify about specific transactions that he believes were unauthorized

13    based on his firsthand knowledge.  The bigger challenge that Jefferson faces, however,

14    is in offering evidence that traces the allegedly indirectly stolen LOC funds without the

15    aid of expert testimony from an accountant, especially if this involves tracing "thousands

16    of transactions involving close to $40,000,000 of Jefferson's income, as they passed

17    through an extensive web of accounts and limited liability companies set up by Kritza,"

18    as Jefferson's counsel has stated.[84]  Although Tucciarone provided his opinion on this

19    matter at his deposition, that opinion was not based on common knowledge, but rather

20

21

---

22    [80]Doc. 270 at 10.

23    [81]Fed. R. Evid. 602.

24    [82]Fed. R. Evid. 701.

25    [83]*Id.  See also* 29 Victor James Gold, *Federal Practice & Procedure* § 6253 (2d ed.)

26    ("[B]oth lay and expert opinions may be based on firsthand observation and experience.  Where
      an opinion has such a basis, and the witness derives the opinion *without also calling upon*

27    *specialized knowledge*, it will be classified as a lay opinion.") (emphasis added).

28    [84]Doc. 85-1 at 3 ¶ 12.

1   his specialized knowledge as an accountant.[85]  Tucciarone will not be allowed to offer
2   such testimony at trial.

3       Jefferson argues that he may use the schedules that he attached to his
4   supplemental disclosure statement to trace the LOC funds under Rule 1006 because
5   those schedules are "summary charts."[86]  The court is unable to determine the validity
6   of this argument because the only version of those schedules before the court is
7   illegible.  To the extent that those schedules contain opinions, as opposed to
8   summaries of voluminous documents, Rule 1006 does not apply.

9       The court will deny Kritza's motion because he has not shown that expert opinion
10  testimony is required to establish Jefferson's damages.  Kritza, for example, ostensibly
11  has firsthand knowledge about all of the disputed transactions and Jefferson can
12  question him about them.  None of Jefferson's lay witnesses, however, will be allowed
13  to offer opinions based on matters they did not perceive firsthand or that require
14  specialized knowledge.  And Jefferson also may not use schedules that incorporate
15  expert opinions as a back door to submitting such evidence to the jury.

16                          **IV.  CONCLUSION**

17      Based on the preceding discussion, Kritza's motion at docket 267 is **GRANTED**
18  **IN PART AND DENIED IN PART** as follows: Jefferson generally may not refer to the
19  FBI investigation, assert that the FBI is actively investigating or considering whether to
20  prosecute Kritza, or reference a criminal case, criminal prosecution, or criminal
21  proceedings against Kritza, or refer to Kritza as a criminal defendant, unless Kritza is

22

23

24      [85]*See, e.g.,* Doc. 270-4 at 31 ("Q: Based on the analysis you've done and documents
        you've reviewed, do you believe that Ted Kritza took money from Richard Jefferson?  A: Yes.
25      Q: And why do you believe that?  A: Because I've reviewed the documents and seen the trail
        and the methods and techniques that have been used and I'm familiar with that type of
26      accounting and transferring of information to hide money.").

27      [86]Doc. 279 at 10.  "The proponent may use a summary, chart, or calculation to prove the
        content of voluminous writings, recordings, or photographs that cannot be conveniently
28      examined in court."  Fed. R. Evid. 1006.

                          -17-

formally charged with a crime.  The only exception to this ruling is that Jefferson may reference the FBI only to the extent necessary to lay a foundation for Armstrong's testimony provided that Jefferson is able to satisfactorily explain why Armstrong can testify about the content of the recorded phone conversation between Jefferson and Kritza but cannot produce the recording itself.

Kritza's motion at docket 269 is **GRANTED IN PART AND DENIED IN PART** as follows: Jefferson may offer evidence showing that Kritza used forged documents to access the LOC, but no other forged documents.

Kritza's motion at docket 270 is **GRANTED IN PART AND DENIED IN PART** as follows: Jefferson is precluded from claiming or offering any evidence of special damages; in all other respects the motion is **DENIED**.

DATED this 3rd day of May 2016.


/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE