UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Western Alliance Bank, | |
| Plaintiff, | 2:14-cv-0761 JWS |
| vs. | ORDER AND OPINION |
| Richard Jefferson, | [Re: Motion at docket 291] |
| Defendant. | |
| Richard Jefferson, | |
| Counter-claimant, | |
| vs. | |
| Western Alliance Bank, | |
| Counter-defendant. | |
| Richard Jefferson, | |
| Third-party plaintiff, | |
| vs. | |
| Theodore Kritza & Michelle Lee Kritza, | |
| Third-party defendants. | |

## I.  MOTION PRESENTED

At docket 291 Kritza moves for reconsideration of the court's order at docket 286, which resolved his motion *in limine* at docket 270.  In pertinent part, Kritza's motion at docket 270 seeks an order pursuant to Fed. R. Evid. 402 and 403 barring Jefferson from introducing evidence of certain damages that are listed in his January 11, 2016 disclosure statement, and from introducing the schedules he attached to his disclosure statement.  Jefferson responds at docket 279, arguing that all of his damages are relevant because they can be traced back to the LOC and that his schedules are summary charts, admissible under Fed. R. Evid. 1006.  At docket 286 the court ruled that it could not resolve these disputes because the copy of the schedules then before the court was illegible.

Kritza submits a legible copy of the schedules with his motion for reconsideration and asks the court to reach the merits of his arguments.  The court reviewed these new schedules and found them to be incomplete.  At docket 298 the court ordered Kritza to submit a complete, legible copy of the schedules.  Kritza did so at docket 299.  Oral argument was requested, but would not assist the court.

## II.  STANDARD OF REVIEW

Under LRCiv 7.2(g), motions for reconsideration are usually denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the court's] attention earlier with reasonable diligence."  Courts in this district grant such motions for various reasons, including that the moving party made a convincing showing that the court failed to consider material facts that were before the court at the time of the initial decision.[1]

---

[1]*See, e.g., Best W. Int'l, Inc. v. AV Inn Associates 1, LLC*, No. CV-08-2274-PHX-DGC, 2010 WL 2789895, at *1 (D. Ariz. July 14, 2010).

## III.  DISCUSSION

Because the schedules contain material facts that were technically before the court when it reached its previous decision, yet the court did not consider because they were illegible, Kritza's motion for reconsideration will be granted.  The court will reconsider, in turn, Kritza's arguments to exclude (A) Jefferson's evidence regarding transfers from his personal bank accounts into two Stratosphere accounts; (B) evidence of principal and interest payments made on the LOC from Jefferson's personal bank accounts; and (C) the schedules that Jefferson submitted with his disclosure statement.

**A.   Evidence Regarding the Transfers from Jefferson's Personal Accounts Into the Stratosphere Accounts Is Inadmissible**

Jefferson's damages disclosure states that Kritza has misappropriated $9,881,404.83 in transfers from Jefferson's four bank accounts (Nos. 0230, 2220, 2972, and 4655) into two Stratosphere accounts (Nos. 1497 and 5451). [2]  Kritza's motion seeks to preclude Jefferson from mentioning or pursuing these damages at trial because they are not relevant to any claims alleged in this case and, alternatively, they are unfairly prejudicial and would mislead and confuse the jury. [3]

Although Jefferson responds that these $9.8 million in transfers are relevant because they "relate to" the LOC, he fails to back this up with reliable evidence. [4]  First, Jefferson notes that Alliance's responses to Kritza's first set of non-uniform interrogatories [5] show that "Jefferson's accounts ending in -0230, 2220, 2972 and 4655

---

[2] Doc. 270-3 at 3-4 ($4,424,000 from Account No. 0230 + $1,865,054.83 from Account No. 4655 + $2,580,250 from Account No. 2972 + $1,012,100 from Account No. 2220 = $9,881,404.83).

[3] Doc. 270 at 8-9 n.1.

[4] Doc. 279 at 8.  *See also* Jefferson's Supplemental Responses to Kritza's Non-Uniform Interrogatories, doc. 270-2 at 4-5, 14; Jefferson's Supplemental Rule 26(a)(1) disclosure, doc. 270-3 at 3-4.

[5] Doc. 279-7 at 5-7.

1   were all utilized by Kritza to transfer amounts relating the to the subject lines of credit."[6]

2   This evidence is weak because it merely shows that LOC funds were transferred into

3   Jefferson's personal accounts.  Based on this evidence, it is possible that the funds

4   transferred from Jefferson's accounts contained LOC funds, but it is equally possible

5   that the transfers came from other sources, such as Jefferson's salary.

6          Second, Jefferson cites the schedules he attached to his disclosure statement,

7   but they suffer the same defect.  The schedules merely list the disputed transfers

8   alongside contemporaneous LOC activity.  It appears that the only thing that connects

9   the transfers to the LOC is the fact that they occurred at the same time that the LOC

10  was open.[7]  Jefferson cannot explain how this evidence might lead a jury to reasonably

11  conclude that the transfers contained LOC funds.

12         Jefferson's argument is made even less tenable by the fact that the transfers

13  certainly contain non-LOC funds.  His schedules[8] and Alliance's responses to Kritza's

14  first set of non-uniform interrogatories[9] show that only $2,596.683.16 were advanced

15  from the LOC in total.  Jefferson is claiming that Kritza stole $9.8 million from a funding

16  stream that contained, at most, $2.5 million.  This is not mathematically possible.

17         In this action Jefferson made the strategic choice to allege that Kritza

18  misappropriated the LOC funds, but no others.  This limits the damages that Jefferson

19  can recover to those that can be traced back to the LOC.  And it is fatal to his attempt to

20  recover damages for funds that were transferred from his four personal bank accounts

21  because he lacks reliable evidence that traces those funds back to the LOC.

22

23

24         [6]Doc. 279 at 8.

25         [7]*See, e.g.,* doc. 270-2 at 14 (stating that the transfers listed occurred "during [the] period

26  of" the LOC account).

27         [8]Doc. 299-1 at 13.

28         [9]Doc. 279-7 at 5-7.

-4-

1    The court recognizes the difficulties inherent in tracing commingled funds to their
2    sources.  If Jefferson had expert opinion evidence from a forensic accountant, he might
3    be able to establish the necessary link with respect to some (but not all) of the disputed
4    transfers.  But without such evidence, Jefferson can only establish that the disputed
5    transfers occurred "during the period of" the LOC.[10]  This would be an extremely thin
6    reed upon which to base a finding that any of the transfers included LOC funds.  The
7    slight probative value of Jefferson's evidence is substantially outweighed by the risk of
8    confusing the issues, wasting time, and misleading the jury.[11]  Kritza's motion will be
9    granted, and Jefferson's evidence regarding the transfers will be excluded.

10   **B.    Interest Payments Are Relevant, Principal Payments Are Not**

11         Kritza next attacks Jefferson's attempt to recover the principal and interest
12   payments that were made on the LOC from Jefferson's personal accounts.  Kritza
13   argues broadly that Jefferson should be barred from introducing any "evidence or
14   argument at trial related to monies allegedly taken from accounts other than the
15   Alliance LOC."[12]  In response, Jefferson does not offer any explanation as to why the
16   principal and interest payments qualify as damages.[13]

17         Despite Jefferson's lackluster defense of his claimed damages, the court finds
18   that Kritza goes too far in asserting that Jefferson's damages are limited to the funds
19   advanced from the LOC.  Under Jefferson's theory of the case, Kritza extended the
20   LOC without Jefferson's authorization.  If the jury accepts this theory, it could
21   reasonably include in Jefferson's damages calculation the interest charges he incurred
22   as a result.

---

25   [10]Doc. 270-2 at 4.

26   [11]Fed. R. Evid. 403.

27   [12]Doc. 270 at 8-9.

28   [13]*See* doc. 279 at 8.

1    Principal payments are different.  Debits made for principal payments are offset
2    by corresponding credits.  The net result is a wash.  For example, if Kritza causes the
3    bank to lend Jefferson $1 million and Kritza then uses Jefferson's funds to repay that
4    $1 million to the bank, plus interest, the $1 million principal payment would not qualify
5    as damages because it corresponded with an earlier $1 million credit.  Because
6    Jefferson has not offered any explanation for why the principal payments are relevant to
7    his damages, Jefferson's evidence of those payments will be excluded at trial.

8    **C.    Jefferson's Schedules**

9    Finally, Kritza seeks to preclude Jefferson from using his schedules at trial
10   because it is unclear who created them, and laying a foundation for their admission will
11   require expert witness testimony that Jefferson cannot provide.[14]  Jefferson responds
12   that his schedules qualify as "summary charts" under Fed. R. Evid. 1006.  This rule
13   allows the proponent to use a chart at trial to prove the content of voluminous writings
14   that cannot be conveniently examined in court.[15]

15   Jefferson does not identify the individual or individuals who prepared the
16   schedules.  But he does argue that the schedules can be authenticated by "multiple lay
17   witnesses, including Alliance Bank employees, Kritza, Keyser, Tucciarone, and
18   Jefferson himself" because they did not require specialized knowledge to create.[16]
19   Jefferson is wrong.  His schedules cannot be authenticated by anyone who knows how
20   to read bank statements.  They must be authenticated by the person who created them,
21   or at least someone with firsthand knowledge of how they were created.[17]  Without such

22   _____

23   [14]Kritza also argues that the schedules should be precluded because they were not
24   timely disclosed.  The court's previous order rejected this argument.

25   [15]Fed. R. Evid. 1006.

26   [16]Doc. 279 at 9.

27   [17]See 31 VICTOR JAMES GOLD, FED. PRAC. & PROC. EVID. § 8043 (1st ed. 2016)
28   ("Testimony from the person who prepared the summary evidence usually is required to
     establish [the] foundational facts necessary to relevance and authentication.  But in some

1   testimony, it would be impossible for Jefferson to prove that the schedules summarize
2   what he says they do.

3       Kritza argues that expert witness testimony is required to authenticate the
4   schedules because "[s]omeone will need to explain why there these [sic] $9 million in
5   transactions were picked out of the supposed $40 million in income that ran through
6   Jefferson's accounts."[18]  Kritza asserts that "[l]aying this foundation requires specialized
7   testimony—specifically, an explanation of how Jefferson's damages were calculated."[19]
8   This argument regarding the transfers discussed above is moot in light of the court's
9   ruling today.  The remainder of the schedules appears to be a summary of LOC
10  account activity compiled from bank statements.  Kritza has not shown that it would
11  require specialized knowledge to compile such a summary.

12      Provided that Jefferson can authenticate the schedules at trial using lay witness
13  testimony, the schedules may be admissible under Rule 1006 as summary charts.
14  However, Jefferson must redact from the schedules any reference to the inadmissible
15  transfers discussed in this order and any data generated by expert analysis.  Thus, the
16  schedules may summarize voluminous bank statements, but may not contain expert
17  conclusions about the data.

18                          **IV.  CONCLUSION**

19      Based on the preceding discussion, Kritza's motion at docket 291 is granted in
20  part and denied in part.  Upon reconsideration of the court's order at docket 286, the
21  court grants Kritza's motion at docket 270 as to Jefferson's evidence regarding funds
22  that were transferred from four of his bank accounts into two Stratosphere accounts, his
23  evidence regarding funds that were used to make principal payments on the LOC, and

24

25  instances other witnesses also may have sufficient personal knowledge to testify to these
26  facts.").

27      [18]Doc. 270 at 14.

28      [19]*Id.*

                                -7-

1  the schedules that he attached to his January 11 disclosure statement.  If Jefferson
2  wishes to use charts at trial to summarize voluminous bank records, the charts must
3  comply with the limitations discussed above and must be served on Kritza within 21
4  days.  Kritza's motion is denied in all other respects.
5          DATED this 30th day of August 2016.
6
7                                         /s/ JOHN W. SEDWICK
                          SENIOR JUDGE, UNITED STATES DISTRICT COURT
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28